LAND, J.
Plaintiff sued the defendant for $20,000 damages for injuries alleged to have been sustained in the city of Shreveport on October 23, 1912, by reason of a collision between an automobile for hire in which the plaintiff was riding as a passenger and a train of the defendant at a point on Louisiana street where the tracks of the defendant cross said street.
The petition alleges negligence in the defendant, in that there was no switchman or flagman on the ground at the crossing; no one to give warning; nor was any bell ringing or whistle blowing; nor was any one on the front end of the backing train as a lookout ; nor was the train being run at the low rate of speed required; nor did the train stop as required before crossing the street; nor was there any light on the front end of the train.
The petition charges that the train did not stop before making the crossing, and was •running in excess of six miles an hour, in .violation of the ordinances of the city of Shreveport.
The petition alleges that the plaintiff suffered injuries which shortened her right leg more than an inch, and that “her ribs on *332 the left are' severely injured and permanently,” and that since the collision she has greatly suffered from insomnia, etc.
In a supplemental petition it is alleged that:
“The direct and immediate cause of the said injuries was the fact that the switchman or brakeman, who saw the approaching automobile, did not hold the train at the crossing, and the passage of the train over the crossing was due to the negligence of the said switchman, who was also and further negligent in that he did not take any steps in time to save the approaching automobile.”
This petition was disallowed as inconsistent with the allegations of the original petition.
The answer of the defendant may be epitomized as a general and special denial of each and every negligent act or omission charged in the petition, with a special averment that the accident was caused solely by the gross carelessness of the occupants of the automobile, including the plaintiff, coupled with an alternative plea of contributory negligence on the part of the plaintiff and the other occupants of the car.
The first trial of the case before a jury resulted in a mistrial. The second trial resulted in a verdict in favor of the plaintiff for $4,500. From a judgment pursuant to the verdict, the defendant has appealed.
The occupants of the car at the time of the accident were Miss Bertha Dixon, her sister, Lula, Homer Ferguson, and John Dill-man. The hour of the accident was 2:10 o’clock in the morning. Ferguson was driving the car. Miss Lula Dixon was seated on the back seat with Dillman. The curtains were closed. Ferguson had been driving the car about 20 minutes. He took the place of Dillman, who had started driving about 11 p. m. of the previous day. We excerpt the foregoing facts from Diliman’s testimony: The same witness further stated that the car, which was new, belonged to Monsour & Sons, from whom Ferguson had rented it for three ¡hours commencing about 11:30 p. m. The next 3 hours were spent in driving about the city and the adjoining country.
Dillman said he did not see the defendant’s train until the automobile was about 20 feet from the crossing; that, looking between two houses, he saw the train backing in; that as soon as the train appeared Ferguson turned to the left, and attempted to cross ahead of it; that the car was under full power, but was only going about 4 miles an hour, and could have been stopped within 10 or 15 feet; by his actions, Ferguson seems to have attempted to stop the car; the witness did not see any flagman or signal; the trainmen made no effort to prevent the collision, that he could see, until they were under the car.
Miss Lula Dixon testified that she did not see the train at all, could not see ahead of the automobile, because the curtains were down, and she was not noticing, and the first time she knew of the threatened collision was when it knocked her senseless.
The plaintiff testified that as the car approached the crossing the first thing she saw was “that the train came out on the track” about 4 or 5 feet from them; she saw no flagman, or lantern, or warning; “when she saw the train, she said, ‘O, my God, Homer! look at that!’ and at that he threw the car to the left;” the next thing she knew the car struck them, and he was too close to the train to turn around. On cross-examination the plaintiff said she supposed she saw the train before Ferguson did; that she first saw the back end of the coach, 4 or 5 feet away, she supposes; that the fender of the automobile was over the first track, and the train was on the second track.
Defendants’ evidence was, in substance, as follows: Roche, foreman of the night switch engine, testified that he and his crew were switching a short passenger train from the coachhouse; that the coach was in front, and the engine, head-on, was pushing it, and *334 drawing the rest of the cars; that the train moving from west to east was stopped about 6 feet from the sidewalk in Louisiana street; that the flagman got off and proceeded to the street ear line in the middle of Louisiana street, and gave the signal to come ahead; that the street was clear, and as the train moved ahead, and just as it crossed over the sidewalk, Roche noticed the automobile, about halfway of the block,’ coming down on the right-hand or western side of the street; that the flagman was standing in the middle of the street, and gave the automobile the stop signal, and “hollered, ‘Look out;’ ” that the automobile swerved to the left, and the flagman had to jump back to keep it from hitting him, and as he did so he cried out to Atkins (switchman) to “hold them,” and gave him the emergency signal, which he in turn gave the engineer, who “threw the air. into the emergency and reversed the engine,” and at that time the automobile and the coach came together, about 3 feet from the east curb of the street.
Mr. Roche further testified that the bell of the locomotive was ringing as it approached, and passed over the crossing, which was well lighted by two big are lights which were burning on the occasion in question. The same witness stated several times that the automobile turned at the left, and then went straight ahead in order to cross the track ahead of the coach.
J. A. Gaffney, switchman, testified that the train stopped just west of the pavement of Louisiana street in order to flag the crossing ; that he went out and flagged the crossing, and found the street clear; that he passed the signal “come ahead” to Atkins, who in turn passed it to the engineer; that the train was crossing the street when he first saw the automobile about half a block away; that he did not realize that the automobile was not going to stop until it was right on them; that he flagged the motor ear down and “hollered, ‘Look out,’ ” but no attention was paid to the warning, and then he “hollered to Atkins to hold them” (meaning the train). This witness also testified that the bell on the engine was ringing.
J. T. Atkins, switchman, also testified that the train stopped when it got to Louisiana street; that Gaffney got off and flagged the crossing, and then gave the come ahead signal to the witness, who passed it on to the engineer; that the witness was there for that purpose; that just before the collision Gaffney flagged the engineer down, the engineer applied the brakes, and the train struck the automobile on the street car line and pushed it just beyond the sidewalk.
Mat Pryer, fireman, in his testimony corroborated the testimony of the other defense witness as to the stop of the train at Louisiana street, to the flagging, signals, etc. This witness was on the left side of the locomotive, and had a clear view of the automobile as it neared the train. This witness stated that just as the train started off after the stop he for the first time saw the automobile. It was making a circle to go ahead of the coach, the end of which was about middle way of the street. The witness further stated that Gaffney gave the signal on witness’ side, and flagged the train down, and that the witness “hollered” to the engineer to stop; that the latter put on the brakes and reversed the engine, which pushed the automobile about IS feet.
R. 0. McCoy, engineer, corroborates the testimony of the other witnesses as to matters within his own observation, such as the stop, signals, etc., and stated that when he received the signal to go ahead he released the air, and let the car and engine go1 on at a speed of 3 or 3% miles an hour; that when the train about reached the street car track he received the “distress stop signal,” threw the air into the emergency, and reversed the engine, which was all he could do, and stop *336 ped the train within 22 feet, which was as soon as possible.
A juror, from his questions to the engineer, seemed to think that, if a locomotive can be stopped on a turntable within 6 inches or a foot, it can be stopped in a like distance when operating on the tracks, and that the engineer on the occasion in question should have put on steam instead of permitting his engine to roll down grade.
Mr. I-Iearne, the superintendent of the defendant company, testified that at 8 a. m. of the day of the accident he saw the tracks of the automobile going down on the right side of Louisiana street, and then crossing diagonally over the tracks to the left side of the street.
Plaintiff offered no evidence to rebut the testimony of the trainmen as to their actions in the premises. Plaintiff’s counsel seem to argue this case on the hypothesis that all the trainmen who testified for the defense are unworthy of credit, and that the testimony of the plaintiff and of 'Dillman is sufficient to prove the negligence of the defendant. We cannot concur in this view of the evidence. In our opinion, the testimony of the trainmen shows conclusively that they performed their full duty in the premises, and the testimony of plaintiff shows that she and Ferguson were guilty of gross negligence in driving upon the railroad’tracks without stopping, or even looking or listening. Dill-man was on the back seat of the closed car talking with plaintiff’s sister, who saw nothing, and his vision to the front was obstructed by the bodies of the plaintiff and Ferguson, who also saw nothing, until they were within a few feet of the moving coach. Dill-man said that even he, on the back seat of the car, with his limited field of vision, saw the train when the car was some 20 feet from the railroad track. If he saw, the plaintiff and Ferguson, seated in front, could have seen if they had looked.
Plaintiff, having failed to prove negligence m the defendant, must go out of court.
It is unnecessary for this court to consider this case from the point of view of negligence in plaintiff as a passenger. But we may state that it has been held by respectable authorities that a passenger riding with the driver, and having an equal opportunity to exercise his faculties, and failing to do so, cannot recover damages from a railroad company. Thompson on Negligence* vol. 1, §§ 499, 503; Berry on Law of Automobiles, p. 176.
It is therefore ordered that the verdict and judgment below be set aside and reversed, and it is now ordered that plaintiff’s suit be dismissed, with costs in both courts.