213 So.2d 109 (1968)
George W. GODFREY, Individually and as Administrator of the Estate of his minor son, Andrew Scott Godfrey
v.
BATON ROUGE RECREATION AND PARKS COMMISSION.
No. 7430.
Court of Appeal of Louisiana, First Circuit.
July 1, 1968.
Rehearing Denied August 12, 1968.
Cyrus J. Greco, Sargent Pitcher, Jr., Baton Rouge, for appellant.
Donald S. Zuber of Seale, Smith, Baine & Phelps, Baton Rouge, for appellee.
Before LANDRY, REID and BAILES, JJ.
LANDRY, Judge.
This appeal by defendant Baton Rouge Recreation and Parks Commission (Commission) is from the judgment of the trial court awarding plaintiff George W. Godfrey damages, as administrator of the estate of his five year old minor son, Andrew Scott Godfrey, for personal injuries sustained by the child in an accident which occurred on a "merry-go-round" maintained *110 and operated by the Commission in one of its public parks.
The trial court awarded plaintiff judgment in the sum of $3,500.00 as compensation for the loss of two phalanxes of the child's right little finger, the sole injury sustained in the accident. From said judgment defendant has appealed. Plaintiff has answered the appeal seeking an increase in quantum and also recovery of medical expense denied by the court below. We find that the trial court erred in rendering judgment in favor of plaintiff because plaintiff has failed to establish his case with that preponderance of evidence required by law.
The accident occurred May 2, 1965. On this occasion Scott Atkins Godfrey (Scott), incorrectly designated in the title of this cause as Andrew Scott Godfrey, was on an outing or picnic accompanied by his mother, father and younger sister, who was then approximately 3 years of age.
The crux of this case is the nature of the device upon which the accident happened. The evidence of record concerning its construction and operation consists chiefly of a picture taken by plaintiff which shows Scott and six companions happily enjoying the apparatus a few seconds before the unfortunate incident happened. This photograph, together with meager verbal testimony attempting to explain the apparatus' method of construction and manner of operation is all the evidence of record on this most vital point. From the paucity of testimony reflected by the record, we find it difficult to describe subject equipment in terms which will afford the reader a clear picture of its construction and a cogent understanding of the manner in which it was intended to operate.
From the available evidence subject contrivance may best be described as a flat, round disc approximately eight feet in diameter, mounted on a central axis or mechanism beneath its floor or deck, said axis being so constructed as to permit the entire contraption to rotate. The deck of the implement appears to be made of wedged shaped pieces of plywood or other similar material cut and fitted together to form the circular floor. Its outer perimeter is equipped with approximately twelve handholds apparently constructed of metal tubing formed into varying shapes but each generally designed in the form of an inverted "U" with each end of the "U" securely affixed to the deck. These handholds appear to very in height from twenty-four to thirty inches above the deck and were obviously intended to provide a means for the children to steady themselves while playing on the device. Between each handhold is an open space approximately two feet in width presumably to permit the children to get on and off the apparatus. Beneath the deck of the contraption, recessed approximately two to four inches inside its outer lip or edge, is what appears to be a metal apron extending downward toward the ground approximately four inches but which apron seems to clear the ground by about that same dimension. Inside the aforesaid apron is a concrete wall or foundation rising from the ground and extending upward to a height above the lower extremity of the aforementioned apron but apparently not sufficiently elevated to contact the underside of the deck, otherwise the device would not freely rotate. Apparently this concrete wall or foundation is recessed two or three inches inside the metal apron and was intended in part at least to prevent children from attempting to crawl beneath the apparatus as well as deter them from placing their limbs under the deck surface. Seemingly, the device was set in motion by the children holding onto the handbars and running alongside the merry-go-round on the ground to give the contraption momentum, and when it gained the proper speed they boarded by simply jumping upon the deck. Although no dimensions appear in *111 the record, the photograph in evidence indicates that the floor of the merry-goround is approximately one foot above the ground. It also discloses a well-worn path around the entire circumference of the implement. In addition, the photograph depicts Scott seated on the rim of the deck, facing outward in an open space between two handbars holding onto the bar on each side, his feet extending out and down to a point approximately three or four inches above the ground.
The exact manner in which the accident occurred is not shown with any degree of clarity or certainty by the evidence. Mr. Godfrey, though seated nearby in a chair brought along for the occasion, admittedly did not see the mishap. The only person testifying as to the circumstances immediately preceding the mishap was young Scott.
Plaintiff's basic contention is that defendant was negligent in maintaining and operating the device and that the apparatus was inherently defective and dangerous. In this regard the principal contentions appear to be that the metal apron extending downward toward the ground was dangerous in that its underside was sharp and jagged. Coupled with this argument is the assertion that the surface or deck of the merry-go-round was bent, tilted and warped with the result that it did not remain level or even while turning but rather "dipped" on one side to the extent that the metal apron scraped the ground. From petitioner's oral argument and brief, we understand his position to be that the lad lost his finger either because it was severed by the sharp jagged edge of the apron or was jammed between the apron and the ground at the point where it "dipped" and touched the earth. No witness testified regarding the presence of blood on either the apron or ground as tending to indicate the spot where the child's finger was injured.
Defendant, however, contends the device was safe and in good condition and repair. Although it is conceded the metal apron was somewhat rusty, defendant denies that its underside was sharp and jagged. Further, defendant contends plaintiff did not bear the burden of establishing the manner in which the accident occurred nor did plaintiff discharge its obligation of showing negligence on defendant's part. Plaintiff counters with the argument that the finding of the trial court on questions of fact are not to be disturbed or overturned except on a showing that such conclusions are manifestly erroneous.
Plaintiff, George W. Godfrey, in essence testified he was seated nearby watching his son and the other children play on the merry-go-round. After taking the photograph of Scott, plaintiff busied himself with making some camera adjustments. While so engaged, the accident happened. Godfrey also stated that he was first aware of the mishap when Scott approached him screaming and holding up his right hand at which time plaintiff observed the right little finger all but amputated. According to Godfrey, he immediately took the child to his mother who fainted upon sight of the injury. The child and mother were both placed in the family automobile nearby and taken to the hospital. Godfrey's description of the merry-go-round was that it appeared "kinder beat." He further explained that the underside of the apron was rough and jagged. He also stated that the floor of the device was not level but dipped on one side so much so that it touched the ground at this particular point.
Mr. Petrus J. Turhoeve, also present for the picnic which was a community affair sponsored by residents in the vicinity of the playground, testified he examined the device after the accident but not before. In answer to the question whether the edge or lower part of the apron was rough and jagged, he replied: "I didn't notice anything like that. I observed something different though." He was not asked and did *112 not state what was the "something different" he noted:
Scott's version of the accident is contained in the following testimony:

"DIRECT EXAMINATION
BY MR. ZUBER:
Q. Scott, would you tell the Court your name, please?
A. Scott Atkins Godfrey.
Q. Scott, do you remember something happening to your finger in 1965.
A. All I remember is when I was fixing to fall off of it and I was holding to the ground to stop the thing and my hand went up under and it got cut offand my finger got cut.
Q. When you say your hand went under the thing would you point out what your hand went under?
A. It was right there.
Q. I am going to put an arrow and would you point to where your finger was cut off?
A. Yes, sir.
Q. Now, Scott, do your remember how you started to slip off or what happened?
A. Well, I wasI was sitting down and I started to fall so I put both my hands on the ground and when it started to turn to stop the merry-goround and then the hand went under and got cut off, my finger got cut off."
(Tr. 35, p. 55) (Tr. 36, p. 56)
"BY THE COURT
Q. Scott, tell me again what happened, son? You said you were about to lose your balance?
A. I was about to lose my balance so I put my hands on the ground to stop the merry-go-round?
Q. Were your hands on the ground?
A. To stop it.
Q. To stop, all right, then what happened?
A. Then my finger went under and got cut.
Q. But you never did fall off the merrygo-round?
A. No, sir.
Q. Did you have both hands on the ground or just one hand?
A. Both.
Q. Were you lying on the merry-goround at that point when you put your hands down? How were you situated on the merry-go-round when you put your hands on the ground?
A. I was sitting down and then I stood up and then I started to lose my balance and then I sat down and I kept on losing my balance so I put my hands on the ground.
Q. How fast was the merry-go-round going?
A. It wasn't going fast.
THE COURT: That's all the questions I have.

REDIRECT EXAMINATION
BY MR. ZUBER:
Q. Scott, would you use the photograph markedand show the Court where you put your hands when you said you put your hands on the ground?
A. I put themII put them right there and then it kept on going *113 around and then when I got right there got cut off."

(Tr. 39, p. 59) (Tr. 40, p. 60)
Understandably, the foregoing testimony of an approximately eight year old child, given almost two and one-half years following his injury, presents a somewhat confusing picture of the manner in which the accident occurred. From'the boy's evidence, we cannot conclude whether the finger was lacerated by the underside of the apron or whether it resulted from his finger being jammed between the apron and ground. After continued careful consideration of the photograph and the child's description of the accident, it is most difficult to conceive how his hand could have gone underneath the apron if he remained on the deck of the merry-go-round and never fell off as his testimony indicates. It is difficult also to conceive how he remained on the device but yet had both hands on the ground to prevent his falling therefrom. If the accident did in fact occur in this fashion, it was unusual in nature and one not foreseeable in the ordinary and usual course of events.
No defense of governmental immunity is advanced in the case at hand considering the record disc loses legislative authority to institute this suit against defendant herein.
In effect our jurisprudence holds in cases of this nature that municipalities must exercise that care in the maintenance and operation of its public parks, playgrounds and recreational areas, and the appliances therein and thereof, commensurate with ordinary and reasonable care under the circumstances. See Richard v. General Fire and Casualty Company, La.App., 155 So.2d 676; Goudeau v. Indemnity Ins. Co. of North America, La.App., 200 So. 493.
Admittedly, the cited case involved an accident which occurred on premises utilized as a public swimming pool. The rule, however, applies to all premises and facilities owned and operated by municipalities as public parks and recreational facilities dedicated to the enjoyment, amusement and entertainment of the public at large. The degree of care required in our own jurisdiction accords with the generally accepted view that the municipality in such cases is not the insurer of the safety of those making use of such facilities. Neither is the municipality required to eliminate every source or possibility of danger. Rather the municipality is held to the same degree of care in the performance of its obligations arising from ownership as any other person in possession and control of land. The rule requires that the municipality use reasonable or ordinary care to keep such premises and appliances in reasonably safe condition for children and others using them. See Vol. 63, C.J.S. verbo Municipal Corporations § 907b, page 314.
It is a well established general rule of law that the mere occurrence of an accident does not give rise to the inference of negligence.
Equally well settled is the principle that plaintiff must make out the essential elements of his case by a clear preponderance of evidence.
Plaintiff invokes the rule that the findings of fact of the trial court are not to be disturbed or set aside unless manifestly erroneous. Barrett Division of Allied Chemical & Dye Corp. v. Kennedy Saw Mills, 230 La. 143, 88 So.2d 5. With the rule, we are in complete agreement. However, where the judgment of the trial court is against the clear weight of the evidence, it is the duty of the appellate tribunal to set it aside. Dixon v. Vicksburg, S. & P. Ry. Co., 139 La. 329, 71 So. 527.
On the basis of the record before us, we are not convinced that the accident occurred in the manner urged by plaintiff. We concede, however, plaintiff's theory appears the most likely considering the circumstances.
*114 Assuming arguendo, the accident occurred as plaintiff contends, nevertheless, plaintiff has failed to educe evidence showing lack of due care on defendant's part herein.
We find nothing dangerous per se in the construction of the device. Its deck is perfectly flat, free of holes and unencumbered by any object save the hereinbefore mentioned handholds which are in themselves innocuous and designed merely as a safety measure for children using the appliance. There appears no means by which a child seated on the turntable could insert his hand or any other part of his body into the turning mechanism. Nor do we view the metal apron extending downward from the underside of the floor a source of foreseeable danger in itself. The claim that the underside of the apron is jagged and sharp is not supported by a preponderance of evidence. On the contrary, this particular charge is expressly refuted by the testimony of a completely disinterested witness. Nor does the record show the apparatus tilts so that its apron scraped the ground at the point where Scott indicated the accident happened. Rather, the photograph discloses that with a child of Scott's approximate weight seated at the exact spot where Scott said the accident occurred, the apron though tilted somewhat downward appears to be two or three inches clear of the ground.
Since, in our judgment, the record fails to support the finding of negligence by the trial court herein, it is our duty to reverse. Dixon v. Vicksburg, S. & P. Ry. Co., supra.
Accordingly, the judgment of the trial court in favor of plaintiff George W. Godfrey, Administrator, and against defendant Baton Rouge Recreation and Parks Commission is annulled, reversed and set aside and judgment rendered herein in favor of said defendant rejecting and dismissing said plaintiff's demands at plaintiff's costs.
Reversed and rendered.