BLANCHE, Judge.
This appeal is occasioned by an automobile accident which occurred on December 30, 1968, on U. S. Highway 190 in Livingston Parish, Louisiana. Plaintiffs, A. H. Landry, and Adrian Landry, Jr., his son, originally filed suit against defendant, Bobby G. Cartwright, and his liability insurer, Employers’ Liability Assurance Corporation, Ltd. Because plaintiff, A. H. Landry, died prior to trial, his heirs were substituted as parties plaintiff, that is, his wife, Mrs. Velma McIntyre Landry, and his children, Adrian Landry, Jr., and Sylvia Landry Verlander. Plaintiff, Adrian Landry, Jr., was driving his father’s Ford pick-up truck, in which his father was a passenger, in an easterly direction on said highway when defendant Cartwright, owner and operator of an oncoming 1967 Plymouth automobile, pulled out to pass other vehicles, lost control of his automobile and collided with plaintiffs’ truck, resulting in injuries to the occupants thereof.
At trial defendants stipulated liability and plaintiffs reduced their demand to $25,000, the policy limits of the defendant insurer. The medical expenses of Adrian Landry, Jr., were also stipulated in the amount of $1,369.05. The trial court, without giving us the benefit of any reasons for judgment, rendered judgment for plaintiff, Adrian Landry, Jr., in the sum of $5,000 for loss of past and future wages and in the sum of $8,500 for physical pain and suffering as well as judgment for medical expenses of the late A. H. Landry totaling $1,369.05, to be apportioned to the wife of the deceased in the sum of $684.53 and to the two surviving children in the sum of $342.26 each. All awards were against defendant, Employers’ Liability Assurance Corporation, Ltd.
Defendant, Employers’ Liability Assurance Corporation, Ltd., has suspensively appealed from this judgment, the sole question on appeal being whether the $13,500 award to plaintiff, Adrian Landry, Jr., is excessive.
Plaintiff, Adrian Landry, Jr., was twenty years old at the time suit was filed. The medical evidence concerning his injuries shows that he was hospitalized from December 30, 1968, the date of the accident, until January 4, 1969, and that he was treated by Dr. Carlos D. Alessi, a general practitioner. On Dr. Alessi’s initial examination, he found a slight concussion, contusions and abrasions of the scalp, sprain and contusions of the lumbosacral region, contusions all along the spinal column from the neck down and also sprained muscles in the neck. He was initially admitted to the hospital by Dr. Alessi to “make sure there were no internal injuries.” Plaintiff continued under Dr. Ales-si’s treatment after he was released from the hospital but continued to complain of pain. On February 7, 1969, because he was still complaining, Dr. Alessi called Dr. Luis Matta, an orthopedic surgeon, and after this discussion on Dr. Matta’s recommendation, Dr. Alessi readmitted plaintiff to the hospital on February 10, 1969, where *425 he remained until February 21, 1969. While he was in the hospital, plaintiff received ultrasonic treatments, a lumbosacral support and a neck collar. After that Dr. Alessi continued to treat plaintiff until August, 1969, but did not see him after August until June 11, 1970, since the doctor suffered a heart attack. Thereafter, Dr. Alessi’s contact with plaintiff was limited, with plaintiff’s last visit to the doctor being on May 7, 1971, at which time he was still complaining of headaches and backaches when he did heavy lifting.
In the course of his treatment of plaintiff, Dr. Alessi referred him to Dr. Luis F. Matta, an orthopedic specialist, Dr. Daniel E. Schechter, an orthopedic specialist at Oschner’s Foundation Hospital, and Dr. J. Willard Dowell, another orthopedic specialist. Dr. Alessi agreed with these doctors, i. e., that he could find no reason that plaintiff could not go back to work, but, nevertheless, plaintiff kept complaining of headaches and backaches. When asked his opinion concerning whether the headaches were associated with the accident, Dr. Alessi answered, “More probably than not because I have taken care of this Landry family for years and years and years and he never was a chronic bellyacher.”
Plaintiff’s testimony concerning his pain is substantiated by his mother, Velma Landry, who testified that he slept with a heating pad for pain in his back every night and that she had to rub him with alcohol. Mr. Jerry Phelps, plaintiff’s foreman at Dow Chemical Company, substantiated this testimony by testifying that he gave Mr. Landry light work because he was not capable of doing heavy work and that he would suffer pain so severe that “if he’s got sweat pop out on him,- you know he’s in pain.”
The medical report of Dr. Luis F. Matta was negative. He stated after his examination of plaintiff approximately a month and a half after the accident, “I am not impressed by the findings related to the cervical spine and neither am I impressed by the amount of pain that he claims to have.” On March 28, 1969, Dr. Matta reexamined plaintiff and found, “Clinically, he exhibited almost a full range of motion of the neck and appeared to be voluntarily impeding further range of motion.” He also stated:
“I am sufficiently convinced that this patient has no consistent findings to account for his present symptomatology. I find no objective evidence of injury and his symptoms are strictly subjective in character. I do not feel that any further examination of this patient is necessary and I don’t see why he should not be able to return to his former activities with no residual disability.” (Exhibit D-2, Record, p. 47)
The medical report of Dr. J. Willard Dowell, orthopedic specialist, concerning his examination of plaintiff on April 14, 1970, stated:
“ * * * I am a little at loss to explain the severe headaches in the frontal region and also the extent of continued disability in his neck or lower back. I have seen headaches as a result of an accident of this type, but more commonly they are located in the back of the head rather than in the frontal region. As headache is one of his main complaints, I feel it would be of some value to see a neurosurgeon or a neurologist in consultation. As far as this patient’s neck and back is concerned, it is my opinion that he has recovered sufficiently to carry out the duties of a Teamster.” (Exhibit D-3, Record, p. 48)
The medical report of Dr. Daniel E. Schechter dated May 12, 1969, indicated:
“ * * * The patient probably sustained a concussion, a cervical and lumbar strain. At the present time he seems to be getting along quite well, although he has many complaints. It is difficult to determine why he cannot return to work as a truck driver when he can do heavy farming work about his home. It is suggested that he see neurosurgery *426 with regard to the headaches. I do not believe that any active treatment, other than heat, exercise, and an attempt to return to work, are indicated at the present time, as far as his cervical or lumbar injuries are concerned. I expect him to have a good recovery.” (Exhibit D-4, Record, p. 48)
The foregoing review of the evidence indicates that there is no medical evidence to support plaintiff’s continued complaints of pain and disability. Plaintiff makes the same argument as counsel in the case of Godfrey v. Baton Rouge Recreation & Parks Commission, 213 So.2d 109 (La.App.lst Cir. 1968), and what we said there is applicable here:
“Plaintiff invokes the rule that the findings of fact of the trial court are not to be disturbed or set aside unless manifestly erroneous. Barrett Division of Allied Chemical & Dye Corp. v. Kennedy Saw Mills, 230 La. 143, 88 So.2d S. With the rule, we are in complete agreement. However, where the judgment of the trial court is against the clear weight of the evidence, it is the duty of the appellate tribunal to set it aside. Dixon v. Vicksburg, S. & P. Ry. Co., 139 La. 329, 71 So. 527.” (Godfrey v. Baton Route Recreation & Parks Commission, 213 So.2d 109, 113)
Plaintiff has proved that he was injured in the accident and that he was hospitalized on two occasions shortly thereafter. Except for his own testimony concerning pain and inability to work, the medical evidence convinces us that his injury was of a moderate nature. Therefore, considering the moderate nature of plaintiff’s injuries as revealed by the medical evidence, and giving full weight to his complaints relative thereto, we believe that the award of $8,500 by the trial judge was an abuse of his discretion. We are of the opinion that an award of $4,000 would adequately compensate the plaintiff for his personal injuries. Rydberg v. Wallace, 255 So.2d 368 (La.App.lst Cir. 1971); Sanders v. Continental Insurance Company of New York, 238 So.2d 814 (La.App.lst Cir. 1970); and Boudreaux v. Continental Insurance Company, 242 So.2d 585 (La.App. 1st Cir. 1970).
Medical expenses were stipulated at trial and are not complained of on appeal, and the award to plaintiffs for these damages will not be disturbed.
Plaintiff also failed to prove his claim for loss of wages. There is no medical evidence to show that plaintiff was so disabled that he could not work. At the time of his injury he was out of work, having been previously employed as a truck driver. He admitted he never returned to work as a truck driver for the reason that he couldn’t do the work. We observe that even though he stated that he was off from work for about a year he earned $2,203.17 in 1969 and in the year following when he supposedly could work he earned $1,765.16. Plaintiff, in our opinion, failed to prove that his loss of wages was occasioned by his injuries from the accident. Therefore, the award of $5,000, having been made contrary to the evidence, will be set aside.
For the above and foregoing reasons, the judgment of the trial court in favor of plaintiff, Adrian Landry, Jr., is amended to award plaintiff the sum of $4,000 for physical pain and suffering, and its award of $5,000 for loss of wages is set aside. In all other respects the judgment is affirmed. All costs are to be borne by defendant-appellant.
Amended and as amended, affirmed.