492 So.2d 1236 (1986)
Charles J. BLANCHARD
v.
RILEY STOKER CORPORATION, et al.
No. CA-4109.
Court of Appeal of Louisiana, Fourth Circuit.
June 5, 1986.
Rehearing Denied September 17, 1986.
Ogden, Ogden & McCune, Charlton B. Ogden, II, Carter B. Wright, New Orleans, for defendant/appellant.
*1237 Jacques F. Bezou, P.L.C., New Orleans, for plaintiff/appellant.
Borrello, Huber & Dubuclet, Victor A. Dubuclet, III, Metairie, for intervenor-appellee.
Before CIACCIO, WARD and WILLIAMS, JJ.
WARD, Judge.
On April 11, 1975 Charles Blanchard, age 57, tripped over a welding lead placed across a catwalk and fell on the floor of the catwalk while he was working at the Michoud Power Plant owned by New Orleans Public Service, Inc. Blanchard was employed as a pipefitter foreman by Riley Stoker Corporation. NOPSI had hired Riley Stoker and other companies to convert NOPSI's boilers to oil burners. Blanchard suffered a ruptured intervertebral disc from the fall. Liberty Mutual Insurance Company, the worker's compensation insurer of Riley Stoker, paid Blanchard $39,112.23 in worker's compensation and medical benefits.
Blanchard filed a negligence suit against NOPSI, Riley Stoker and its executive officers, Liberty Mutual and several other defendants. Prior to trial Blanchard settled with the executive officer's insurer. After trial the jury entered a verdict and award in favor of Blanchard and against NOPSI for $1,250,000 in damages, which the Trial Judge reduced by remittitur to $566,000. The Trial Judge also entered a judgment in favor of Liberty Mutual and against Blanchard for reimbursement of the worker's compensation benefits.
Seeking to reinstate the original jury award, Blanchard appealed. NOPSI also appealed, arguing that the verdict of the jury was clearly erroneous on the issue of NOPSI's liability, and, in the alternative, that the damages, although partially remitted, are still excessive. NOPSI also argued that the award in favor of Liberty Mutual should be reversed. Liberty Mutual answered and requested the judgment be affirmed, particularly the portion recognizing reimbursement for Liberty.
We hold that NOPSI is not liable for Blanchard's injuries and reverse the verdict of the jury. Thus, we need not address the other issues raised by NOPSI, Liberty Mutual and Blanchard.
We are mindful that jury verdicts are entitled to great weight. Nonetheless, we are obliged to review the facts and when a jury verdict is manifestly erroneous, we must reverse. Davis v. Moore, 353 So.2d 740 (La.App. 4th Cir.1977).
A duty-risk analysis is used to determine the issue of NOPSI's fault. Under this analysis, to establish a defendant's liability and recover tort damages, the plaintiff must prove by a preponderance of evidence that: 1) a defendant's conduct contributed to plaintiff's injury, that is, defendant was a cause in fact of plaintiff's harm; 2) a duty was imposed by a general rule of law on defendant to protect this plaintiff from this type of harm arising in this manner; 3) defendant violated the duty with respect to plaintiff, i.e., defendant acted unreasonably; and 4) damages were sustained. Hill v. Lundin & Associates, Inc., 260 La. 542, 256 So.2d 620 (1972); McCurry v. City of New Orleans, 475 So.2d 2 (La.App. 4th Cir.1985); Crowe, The Anatomy of a TortGreenian, As Interpreted By Crowe Who Has Been Influenced By MaloneA Primer, 22 Loy.L. Rev. 903 (1976).
The record shows that NOPSI employed many companies to modify its boilers which had been manufactured by Riley Stoker. For the fuel conversion, NOPSI hired Riley Stoker to add more soot blowers to the boilers, a highly specialized installation job for which Riley Stoker had hired approximately fifty men to work at NOPSI's plant.
On the day of the accident at approximately 5:15 p.m. Blanchard and Dan Pettis, a welder for Riley Stoker, finished work on an upper level of a NOPSI boiler and picked up their tools to take them to the tool box located on a lower level. Carrying armloads of tools, they went to the elevator to go down, but it was full. Blanchard, followed by Pettis, then went to leave by *1238 an alternate route of stairs and catwalks which were used by employees of NOPSI, Riley Stoker and other contractors to go from one level to the next.
Blanchard failed to see a black, three-quarter inch thick welding lead suspended over four-inch high kickplates and across the black grated floor of a four-foot wide galvanized steel catwalk. Tripping over the lead, Blanchard fell on the floor of the catwalk. Pettis testified he had been on the catwalk at lunch time that day and the lead was not there at that time. The accident was reported to two Riley Stoker employees, Blackie Wolf and O.B. Melvin, Sr., who were Blanchard's supervisors. The accident was never reported to NOPSI. Pettis took Blanchard to the hospital. The following morning, Pettis and two other men removed the lead from the top of the catwalk. They discovered the lead was attached to a Riley Stoker welding machine and extended over the catwalk into an area where Riley Stoker boilermakers had been working on the day of the accident. Melvin testified that he knew a Riley Stoker boilermaker had put the lead on the catwalk.
None of NOPSI's employees helped Riley Stoker's employees install the blowers. Nor did anyone from NOPSI give Blanchard any job supervision or directionhe reported directly to Melvin and Wolf. Both of these men were responsible for the safety of Riley Stoker employees, and they held weekly meetings on safety procedures for the boiler site. At these meetings the employees were repeatedly warned not to position a lead across the top of a catwalk because it created a trap.
The liaison between NOPSI and Riley Stoker was Tom Bingham, a NOPSI mechanical engineer. Bingham worked at the NOPSI plant adjacent to the boiler where the accident occurred, and he visited the boiler site once a day to meet with Melvin and Wolf. As a field representative for NOPSI, Bingham arranged for NOPSI equipment shutdowns and monitored Riley Stoker's work only to make sure the result complied with job design plans and specifications. Bingham, however, had no control over how Riley Stoker installed the soot blowersRiley Stoker had full control over its work. Nor did Bingham have any control or supervision over the equipment used by Riley Stoker employees.
While Bingham could have stopped Riley Stoker's work if he had seen an extremely dangerous situation, he understood that it was Riley Stoker's responsibility to inspect the area and equipment and to choose safe work procedures. If he had seen a lead improperly placed across a catwalk, Bingham testified that he would have immediately reported the problem to Melvin or Wolf. Bingham, however, was not a safety engineer for NOPSI. Neither he nor any other NOPSI employee held safety meetings or issued safety rules for Riley Stoker employees or conducted inspections of the area where they worked.
We now determine whether there is a general rule of law governing NOPSI's conduct. If there is, then we must decide whether the enunciated rule of law extends to or is intended to protect Blanchard from injuries arising in this manner. Hill v. Lundin, 256 So.2d at 622.
NOPSI, as the owner and operator of a facility, has a duty to provide persons on its premises a safe place to work. Walker v. Union Oil Mill, Inc., 369 So.2d 1043 (La.1979). The next question, therefore, is whether the rule of law which requires NOPSI to provide safe premises encompasses the risk of Blanchard, an employee of Riley Stoker, suffering a back injury from tripping over a Riley Stoker welding lead improperly left by a Riley Stoker employee on NOPSI's catwalk in an area controlled by Riley Stoker supervisors who had repeatedly warned its employees not to create this unsafe condition.
Blanchard argues that NOPSI breached its duty to provide a safe place to work by not warning Riley Stoker employees about unsafe procedures, by not providing them safety instructions, by not holding safety meetings and by not inspecting catwalks for unsafe conditions. We disagree.
*1239 When an accident occurs and an owner's liability is at issue, the proper question is, "whether in the management of his property he has acted as a reasonable man in view of the probability of injury to others." Walker, 369 So.2d at 1047. In spite of the existence of an owner's significant duty, he is not an insurer against the possibility of an accident on his premises. Marshall v. Landmark Land Company, Inc., 383 So.2d 418 (La.App. 4th Cir.1980).
We believe NOPSI acted reasonably. An owner who hires a contractor over which the owner exercises no operational control has no duty to discover and remedy hazards created by that contractor's employees. The evidence in the present case shows that NOPSI did not retain control over the manner of performance of Riley Stoker's conversion of the boilers. We hold the rule of law which imposes a duty upon an owner to provide a safe premises does not encompass the risk encountered in this case. Therefore, the judgment of the Trial Court is reversed. All costs of this appeal to be paid by Blanchard.
REVERSED.