Arthur BUXTON

v.

AMOCO OIL COMPANY, et al.

Civ. A. No. 86–0564.

United States District Court,
W.D. Louisiana,
Opelousas Division.

Nov. 20, 1987.

Allen, Gooch, Bourgeois, Beaux, Robison & Theunissen, John H. Hughes, Lafayette, La., for intervenors.

Donald L. Mayeux, Eunice, La., for plaintiff.

Morrow, Morrow, Ryan & Bassett, James P. Ryan, Opelousas, La., for Morrow, Morrow, Ryan & Bassett.

Jones, Walker, Waechter, Poitevent, Carrere & Denegre, John O. Charrier, Jr., New Orleans, La., for Amoco Production Co.

Adams and Reese, Sam A. LeBlanc & Timothy W. Cerniglia, New Orleans, La., for Devoe Paint Co. and Grow Group, Inc.

## RULING

NAUMAN S. SCOTT, District Judge.

This matter is now before us on separate Motions for Summary Judgment filed by Devoe Marine Coatings Company, a division of Grow Group, Inc. and Grow Group, Inc. (hereinafter referred to as "Devoe"), and by Amoco Production Company (hereinafter referred to as "Amoco").

## BACKGROUND:

Plaintiff, Arthur Buxton, has brought this action against Amoco and Devoe primarily pursuant to the Outer Continental Shelf Lands Act (OCSLA), 43 U.S.C. § 1331, *et seq.* and the applicable laws of the State of Louisiana. Plaintiff seeks damages for personal injuries he allegedly sustained while working on Amoco's fixed platform located in West Delta Block 35 on the Outer Continental Shelf more than three miles off the coastline of Louisiana.

Prior to plaintiff's injury, Amoco contracted with Devoe to sandblast and paint various Amoco platforms, including the West Delta Block 35 "C" platform. That agreement provided that Devoe "shall be an independent contractor with respect to all work done and services performed [under the contract]," and that Devoe "shall furnish ... all necessary labor, machinery, equipment, tools, transportation and whatever else is necessary" for the completion of the job. Amoco's Motion for Summary Judgment, Exhibit I "Amoco/Devoe Contract", ¶¶ 1, 6. Devoe, in turn, subcontracted with plaintiff's employer, Lakeside Contractors, Inc., a wholly owned subsidiary of Consolidated Operating Company, Inc.

(hereinafter referred to as "Lakeside"). Devoe and Lakeside entered into a subcontract agreement on May 1, 1985 which provided that Lakeside "will supply labor, various material and equipment, and sand" necessary for sandblasting and painting the Amoco platforms. Devoe's Motion for Summary Judgment, Exhibit A "Agreement", ¶ 1. The subcontract agreement also specified that Lakeside was being employed as an "independent contractor," *Id.* at ¶ 6, that Lakeside would be responsible for the safety of its employees,[1] *Id.* at ¶ 4, and that the agreement itself "shall be governed by, and construed in accordance with, the laws of the Commonwealth of Kentucky." *Id.* at ¶ 15.

On July 11, 1985 plaintiff was employed by Lakeside as a blasting and painting foreman. Plaintiff was in charge of the four-man Lakeside crew which had been assigned to sandblast and paint the West Delta Block 35 "C" platform. During the course of his work that day, plaintiff climbed onto a water tank situated on a lower deck in order to inspect a beam which ran along the ceiling and supported the upper deck. Plaintiff ascended the ladder attached to the side of the tank, walked across the top of the tank, and then climbed onto some overhead pipes which were three-to-four feet above the tank. After inspecting the beam, plaintiff lowered himself back onto the top of the tank. Plaintiff alleges that at this point the metal top to the tank gave-in beneath his weight and then suddenly sprang back, causing him to be thrown from the top of the tank onto the platform deck, approximately 20–25 feet below. In his Complaint, plaintiff charges that Amoco and Devoe are liable for his damages based upon theories of negligence and strict liability. Plaintiff's Original Complaint at ¶¶ 8–9.

In its Motion for Summary Judgment, Devoe contends that plaintiff has failed to

---

1. *Insurance:* The safety and conduct of all persons employed by [Lakeside] ... shall be the full responsibility of [Lakeside]. [Lakeside] shall notify Amoco and [Devoe], in writing, of the existence of any hazardous conditions, property or equipment at the job site which are not

under [Lakeside's] control; however, it shall be [Lakeside's] responsibility to take all necessary precautions against injury to such persons, ... from such hazards until corrected by the responsible party.
*Id.* at Plaintiff 4.

demonstrate two essential elements of his negligence claim against Devoe, i.e., (1) a breach of a legal duty owed by Devoe to plaintiff, and (2) a causal connection between an alleged breach of duty and plaintiff's injury. Devoe asserts that it had no duty to take any affirmative action to protect the employee of its independent contractor injured during the course of the work contracted for, where Devoe did not exercise operational control over the independent contractor. Additionally, Devoe neither owned nor controlled the tank which allegedly caused plaintiff's injury.[2] Accordingly, Devoe argues that it is entitled to a summary judgment as a matter of law due to the absence of evidence necessary to support plaintiff's claims against it.

Similarly, in its Motion for Summary Judgment, Amoco maintains that it is entitled to a summary judgment dismissing plaintiff's negligence claim against it for the same reasons asserted by Devoe, i.e., Amoco did not exercise operational control over Lakeside, which was its independent subcontractor. Amoco also argues that the facts alleged by plaintiff do not support his strict liability claim against Amoco under La.C.C. arts. 2317 or 2322.

Plaintiff maintains that genuine issues of material fact exist with regard to his claims against both defendants. Plaintiff argues that both Amoco and Devoe had representatives present on the platform at the time of his injury and these individuals exercised sufficient control over Lakeside's work to render defendants liable for failing to provide a safe place for plaintiff to work and failing to warn him about the defective condition of the water tank. Furthermore, plaintiff argues that the facts support his claim that Amoco's water tank was defective and that such defect caused his injury.

THE LAW:

A. *Summary Judgment.*

Rule 56(c) authorizes summary judgment when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). When a properly supported Motion for Summary Judgment has been made, the adverse party "must set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e). "[T]he question whether summary judgment is appropriate in any case is one to be decided upon the particular facts of that case." *First Nat'l Bank of Arizona v. Cities Service Co.,* 391 U.S. 253, 259, 88 S.Ct. 1575, 1577, 20 L.Ed.2d 569, 575 (1968). In considering the evidence and the factual inferences arising from it, all reasonable doubt should be resolved in favor of the non-movant. *Poller v. Columbia Broadcasting System, Inc.,* 368 U.S. 464, 473, 82 S.Ct. 486, 491, 7 L.Ed.2d 458, 464 (1962); *Anthony v. Petroleum Helicopters, Inc.,* 693 F.2d 495, 496 (5th Cir.1982). The Supreme Court recently observed in *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986), that Rule 56(c) by its very terms "provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Id.* 477 U.S. at ——, 106 S.Ct. at 2510, 91 L.Ed.2d at 211. The court emphasized the requirement that a factual dispute must be material to the outcome of the action in order to preclude summary judgment. "Factual disputes that are irrelevant or unnecessary will not be counted." *Id.* A dispute about a material fact is "genuine" "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Id.* 477 U.S. at ——, 106 S.Ct. at 2510, 91 L.Ed.2d at 211–12. Therefore, the threshold inquiry to be applied by the court under Rule 56 is whether a genuine issue of material fact remains for trial—"whether, in other words, there are any genuine factual issues that properly can be resolved only by a

---

**2.** Devoe argues that it cannot be found strictly liable under either La.C.C. arts. 2317 or 2322 since it did not own or have custody of the water tank. Plaintiff does not dispute this argument.

finder of fact because they may reasonably be resolved in favor of either party." *Anderson,* 477 U.S. at 323, 106 S.Ct. at 2511, 91 L.Ed.2d at 213.

In *Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986), which was decided the same day as *Anderson, supra,* the Supreme Court pointed out that while the moving party has the burden of showing the nonexistence of any issue of material fact, this burden may be discharged by showing that there is an *absence of evidence* to support the non-movant's case. The Motion for Summary Judgment "may, and should, be granted," regardless of whether the moving party accompanies its motion with affidavits, "so long as whatever is before the district court demonstrates that the standard for the entry of summary judgment, as set forth in Rule 56(c), is satisfied." *Id.* 477 U.S. at ——, 106 S.Ct. at 2553, 91 L.Ed.2d at 274. The court further stated:

> In our view, the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial. The moving party is 'entitled to judgment as a matter of law' because the non-moving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof.

*Celotex,* 477 U.S. at 322–23, 106 S.Ct. at 2552–53, 91 L.Ed.2d at 273.

B. *Plaintiff's Negligence Claim Against Defendants.*

In Louisiana, courts employ a "duty risk" analysis in negligence actions in order to determine whether liability exists under the facts of the case. Under this analysis, the plaintiff must prove by a preponderance of the evidence that:

(1) Defendant's conduct was a cause-in-fact of plaintiff's harm;

(2) A duty was imposed by a general rule of law on defendant to protect this plaintiff from this type of harm arising in this manner;

(3) Defendant violated the duty with respect to plaintiff, i.e., defendant acted unreasonably;

(4) Damages were sustained.

*Mart v. Hill,* 505 So.2d 1120 (La.1987); *Hill v. Lundin & Associates, Inc.,* 360 La. 542, 256 So.2d 620 (1972); *Blanchard v. Riley Stoker Corp.,* 492 So.2d 1236 (La.App. 4th Cir.1986); Crowe, *The Anatomy of a Tort—Greenien, as Interpreted by Crowe Who Has Been Influenced by Malone—A Primer,* 22 Loyola L.Rev. 903 (1976).

Plaintiff doesn't allege that defendants committed active negligence, rather he claims that defendants *failed to take action* for his safety. *See,* Original Complaint at ¶ 7; Plaintiff's Opposition to Devoe's Motion for Summary Judgment at ¶ 5. "It is a fundamental principle of tort law that one cannot be liable for negligence based on a *failure to act* unless one first has a duty to act." *Futo v. Likes Bros. Steamship Co., Inc.,* 742 F.2d 209, 214 (5th Cir.1984); *see also, Schroder v. Goldrus Drilling Co.,* 679 F.Supp. 5 (W.D.La.1987) (Duhe, J.). Under Louisiana law, as a general rule, a principal who employs an independent contractor is normally *not* under a duty to take affirmative action to protect employees of that independent contractor from injury in the couse of the contracted-for work. *Hawkins v. Evans Cooperage Co., Inc.,* 766 F.2d 904, 906 (5th Cir.1985); *Futo,* 742 F.2d at 214; *Hyde v. Chevron USA, Inc.,* 697 F.2d 614, 630 (5th Cir.1983); *Robideaux v. Hebert,* 118 La. 1089, 43 So. 887, 889 (1907). An exception to the rule applies, however, when a principal retains control over the "operative details" of the independent contractor's work. *Hawkins, supra,* at 906–08; *Futo, supra,* at 214–15. Nonetheless, courts within this circuit have consistently held on similar facts that a principal who

hires an independent contractor over which he exercises no operational control has no duty to ensure through instructions or supervision, that the independent contractor will perform its obligations in a reasonably safe manner. *Ainsworth v. Shell Offshore, Inc.*, 829 F.2d 548 (5th Cir.1987); *Hawkins, supra; Wallace v. Oceaneering Internat'l*, 727 F.2d 427 (5th Cir.1984); *McCormack v. Noble Drilling Corp.*, 608 F.2d 169 (5th Cir.1979); *Funderburk v. Maintenance Associates, Inc.*, 640 F.Supp. 813 (E.D.La.1986); *Touchstone v. G.B.Q. Corp.*, 596 F.Supp. 805 (E.D.La.1984). *See also, Robideaux, supra; Blanchard, supra; Smith v. Crown Zellerbach*, 486 So.2d 798 (La.App. 1st Cir.1986); *Cornish v. Ford, Bacon & Davis Construction Corp.*, 304 So.2d 361 (La.App. 1st Cir.1974). The same result has been reached by courts applying Kentucky law. *See Olds v. Pennsalt Chemicals Corp.*, 432 F.2d 1033 (6th Cir.1970); *Grogan v. United States*, 341 F.2d 39 (6th Cir.1970); *King v. Shelby Rural Electric Cooperative Corp.*, 502 S.W.2d 659 (Ky.Ct.App.1973). In *Cornish*, the Louisiana Court of Appeal stated:

> Under our well established law, an owner is not liable to third parties for the negligent acts of a contractor where the contractor undertakes performance of a work pursuant to a contract in which the owner furnishes plans and specifications, and possesses only the right to insist that the job be performed in accordance with the contract plans and specifications.

304 So.2d at 366. Many of the courts addressing the question of "operational control" have looked to Restatement (2d) of Torts, §§ 409 and 414 for guidance. *See, e.g., Wallace, supra*, at 437; *McCormack, supra*, at 175; *Moser v. Texas Trailer*

*Corp.*, 623 F.2d 1006, 1015 (5th Cir.1980); *King v. Shelby Rural Electric Cooperative Corp., supra*, at 661. Section 414 of the Restatement provides that an employer who retains control of the work has a duty to prevent independent contractors from working in a dangerous manner. Comment C provides:

> In order for the rules stated in this Section to apply, the employer must have retained at least some degree of control over the manner in which the work is done. It is not enough that he has merely a general right to order the work stopped or resumed, to inspect its progress or to receive reports, to make suggestions or recommendations which need not necessarily be followed, or to prescribe alterations and deviations. Such a general right is usually reserved to the employer, but it does not mean that the contractor is controlled as to his methods of work, or as to operative detail. There must be such a retention of a right of supervision that the contractor is not entirely free to do the work in his own way.

Restatement (2d) of Torts, § 1414, Comment C (1965).

It is clear from the evidence that neither Amoco nor Devoe retained control over the manner in which the sandblasting and painting was done on the platform, and particularly, did not retain control over the work being performed by plaintiff at the time of his injury. The pertinent contracts executed by the parties show that Amoco employed Devoe as an independent contractor to sandblast and paint its platforms, and Devoe, in turn, hired Lakeside as its independent contractor to actually perform the work using Devoe's paint materials.[3]

**3.** In his Supplemental Memorandum filed in opposition to Devoe's Motion for Summary Judgment, plaintiff raises for the first time the argument that "Lakeside *may* well have not been an independent contractor but an employee of Devoe" (emphasis added). Plaintiff cites no Kentucky authorities and only one Louisiana case in support of his argument. We find that it is clear beyond doubt that Lakeside was an independent contractor of Devoe as defined under Kentucky law. *Davis v. Perkins*, 620 S.W.2d 331 (Ky.Ct. of App.1981); *King v. Shelby Rural*

*Electric Cooperative Corp.*, 502 S.W.2d 659 (Ky.Ct. of App.1973); *Carter v. Martin Petroleum Co.*, 460 S.W.2d 810 (Ky.Ct. of App.1970); *see also Clark v. Young*, 692 S.W.2d 285 (Ky.Ct. of App.1985) (issue of whether plaintiff and defendant had an independent contractor relationship was a question of law and not proper for jury consideration). The result would be the same under Louisiana law. *Ainsworth v. Shell Offshore, Inc.*, 829 F.2d 548 (5th Cir.1987); *Hickman v. Southern Pacific Transport Co.*, 262 La. 102, 262 So.2d 385 (1972); *Williams v. Fav-*

The testimony of various witnesses shows that the plaintiff himself, working as Lakeside's foreman, actually directed the details of the sandblasting and painting work performed by the Lakeside crew. Deposition of Plaintiff at 24–25, 39, 172–73; Deposition of Wallace Meaux, Jr. at 59, 73–75; Deposition of Danny Huval at 9–10; Deposition of Earl R. Sparrow at 73, 82–84; Deposition of Jack McLester at 35. Jack McLester worked for Amoco as a "pumper" or production operator, and served as Amoco's representative on the platform, however he did not control the manner or method of the work performed by Lakeside. Deposition of Plaintiff at 38–39. McLester testified that he did not have any direct contact with the Lakeside crew, since his responsibility primarily involved "the production of the platform, taking care of the production equipment, maintenance of such, and seeing that the production is continuous." McLester, *supra,* at 14, 17. McLester evidenced no responsibility and no knowledge of the procedures for painting and sandblasting the platform, as his concern was the production work and he considered the Lakeside crew to be "specialists at their trade." McLester, at 14–16. Plaintiff confirmed that he had no discussions about Lakeside's work activities with the Amoco pumper. Deposition of Plaintiff at 164–65. Ronald Buxton, plaintiff's brother and a Lakeside crewmember, testified that he had no reason to discuss Lakeside's work with any Amoco employees. Deposition of Ronald Buxton at 77.

Earl Sparrow served as Devoe's technical supervisor on Amoco's platform and it was his role to inspect the quality of the work performed by Lakeside. Although Sparrow instructed the plaintiff about when the weather conditions were suitable for painting and how the Devoe paint should be mixed, his primary function was to inspect the results of Lakeside's work and determine whether it was satisfactory or not. When questioned about Sparrow's role, plaintiff testified:

Q: What would the Devoe man tell you to do?

A: Well, he told me when we could paint, when we could—you know—if the humidity was good enough to paint in, and it was good enough to paint and when we could blast and stuff like that, you know.

Q: And besides that, once he told you whether it was good enough to paint or not, it's you that made the decisions on how you painted and—

A: No, sir. He told us if it was good enough, to paint.

Q: If he came in one day and said O.K. you can start painting today the weather's fine or whatever, after he made that decision, it was up to you to instruct your men and do whatever you needed to do to do the painting?

A: Yes, sir.

Q: In other words, while the painting was going on, it was you that was in charge of what was going to take place?

A: Yes, sir. And he'd come out and check the mills, you know. Before we could put another coat on it, we had to have the right mills on it, you know, like seven, eight mills or eight mills, whatever they called for.

Q: Between the time that the Devoe man came out and told you you could paint and the time that he came out to

---

*rot,* 499 So.2d 623 (La.App. 4th Cir.1986), *writ denied,* 503 So.2d 19 (La.1987); *Smith v. Zellerbach,* 486 So.2d 798 (La.App. 1st Cir.), *writ denied,* 489 So.2d 246 (La.1986).

Under the contract between Devoe and Lakeside, Lakeside was required to supply labor, materials, and equipment necessary to perform the sandblasting and painting. The contract expressly provided that Lakeside was to be an independent contractor and *not* an employee of Devoe. Lakeside was also required to carry its own workmen's compensation and general liability insurance. More importantly, nowhere in the contract is there any reservation of control over the means used to perform the job; to the contrary, the evidence shows that Lakeside actually exercised operational control over its work while in progress and the role of Devoe's representative was limited to inspecting the quality of Lakeside's work to ensure that it met Devoe's and Amoco's specifications.

check the millage it's you that decided what went on?

A: Mostly. He'd have to be there to help mix the paint and stuff, show us how to mix the paint and make sure the paint was mixed right.

Deposition of Plaintiff at 171–73.

Sparrow testified that it was his job to make sure that the parts of the platform which Amoco wanted painted were blasted and painted by Lakeside to the standards and specifications determined by Amoco and Devoe. Sparrow, *supra*, at 20, 24. Although he pointed out which parts of the platform needed to be painted, Sparrow did not direct Lakeside's employees "spot-by-spot." Sparrow, *supra*, at 24, 73. *See also*, Deposition of Earl Guidroz at 23. Ronald Buxton testified that it was the Devoe representative's job "to just tell us about the paint and inspect our work to make sure it's done right." R. Buxton, *supra*, at 23. Wallace Meaux, Lakeside's onshore superintendent and plaintiff's immediate supervisor, testified that it was his understanding that the safety and conduct of the Lakeside employees were the responsibility of the Lakeside foreman on the job—in this case, plaintiff. W. Meaux, *supra*, at 68; *Federal Rule of Evidence* 602. When asked whether the Devoe representative was "ultimately responsible for deciding how the work was to be done?", Meaux stated: "I wouldn't say that he was in charge of that. He could tell us where to go to do it and expect us to do it." W. Meaux, *supra*, at 95–96.

The details of how to sandblast and paint the platform were determined by Lakeside. Lakeside provided its own equipment for the job and its employees determined how to erect and operate that equipment. The blasting/painting crew took their instructions from plaintiff, the Lakeside foreman. It was plaintiff who decided how he would maneuver and position himself to inspect the particular beam above the water tank. Deposition of Plaintiff at 73. Furthermore, the correct procedure for sandblasting and painting, as well as the choice of safe work methods, were understood by all to be the responsibility of Lakeside. *Compare Wal-*

*lace v. Oceaneering Internat'l, supra,* at 436–37.

█ It is clear, therefore, that neither Amoco nor Devoe exercised operative control over the work performed by Lakeside's employees. It is not enough that Amoco and Devoe had a general right to order the work stopped or resumed, to inspect its progress, or to insist that the job be performed in accordance with their specifications. Accordingly, defendants had no duty to take any affirmative action in order to protect plaintiff from the risk of harm which he encountered. Having found that plaintiff has failed to make a sufficient showing concerning essential elements of his case, i.e., that defendants had a legal duty to protect him from the risk of harm encountered in this case and that defendants breached that duty, we hold that there is no genuine issue as to any material fact and defendants are entitled to judgment as a matter of law, dismissing plaintiff's negligence claim.

C. *Plaintiff's Strict Liability Claim Against Amoco Under La.C.C. art. 2322.*

Louisiana Civil Code Annotated Article 2322 (West 1979) provides:

The owner of a building is answerable for the damage occasioned by its ruin, when this is caused by neglect to repair it, or when it is the result of a vice in its original construction.

In order to state a claim under this article, plaintiff must establish that (1) there was a building; (2) the building was owned by the defendant; and (3) there was a "ruin" caused by a vice in construction or a neglect to repair the building, which occasions the damage for which recovery is sought. *Steele v. Helmerich & Payne Internat'l Drilling Co.,* 738 F.2d 703, 704 (5th Cir.1984); *Walker v. Tenneco Oil Co.,* 615 F.2d 1121, 1123–24 (5th Cir.1980); *Olsen v. Shell Oil Co.,* 365 So.2d 1285, 1289 (La.1979).

An offshore fixed platform constitutes a "building" within the meaning of the statute. *Steele, supra,* at 705; *Olsen, supra,* at 1289–90. It has also been held that "necessary appurtenances to structures

and movables made immovable by attachment, which are defective or have fallen into ruin, also may be included within that term 'building' for purposes of the building-owner's delictual responsibility under Article 2322." *Olsen*, 365 So.2d at 1291 (quoting *Cothern v. LaRocca*, 255 La. 673, 232 So.2d 473, 477 (1970)). The term "ruin" as contemplated by Article 2322 refers to the actual collapsing, giving way, or falling of a substantial component of the building. *Mott v. Odeco*, 577 F.2d 273, 276 (5th Cir.1978), *cert. denied sub nom, Odeco v. Quality Equipment, Inc.*, 440 U.S. 912, 99 S.Ct. 1226, 59 L.Ed.2d 461 (1979); *Moczygemba v. Danos & Curole Marine Contractors, Inc.*, 561 F.2d 1149, 1151–52 (5th Cir.1977); *Davis v. Royal–Globe Ins. Co.*, 257 La. 523, 242 So.2d 839, 842 (1971); *Sumner v. Foremost Ins. Co.*, 417 So.2d 1327, 1332 (La.App. 3rd Cir.1982).

Plaintiff contends that the top of Amoco's water tank buckled or gave in beneath his weight and then suddenly sprang back, that this condition constituted a "ruin", and that the condition was caused by a vice in the tank's construction or Amoco's neglect to repair the tank. Although plaintiff may well be able to establish the first two elements necessary under Article 2322, i.e., that Amoco owned the platform, which constitutes a "building", and that the water tank is a "necessary appurtenance" to the platform, we nevertheless find that plaintiff is unable to show that his injury was caused by the "ruin" of a substantial component of the platform. While there is conflicting testimony regarding whether the tank top caused plaintiff to fall to the deck, it is essentially undisputed that the metal top flexed inward and then popped back. This action-reaction of the metal top, in our opinion, fails to constitute the "fall or collapse" of a more or less substantial component of the platform.

In *Moczygemba v. Danos & Curole Marine Contractors, Inc., supra,* the plaintiff's decedent was killed when a crane welded to the deck of a drilling platform was pulled off of its pedestals and toppled into the Gulf of Mexico. In considering whether the platform owner was strictly liable under Article 2322 the Fifth Circuit Court of Appeals stated:

Under Louisiana law the owner, here Defendant, is not subject to liability without fault for all damages occasioned by a defective condition on the premises but only for damage occasioned by "ruin".[6]

6. This Court has explained:

The key word in the Article which permits or forbids its application to a given set of facts is "ruin," a word that has been used by the Louisiana legislature interchangeably with its Latin origin, "falling down." *Franks [sic] v. Suthon*, C.C. 159 F. 174. This codal Article thus makes the owner of a building answerable for the damage "occasioned by its ruin—i.e., fall or collapse—whether such is due to structural vice or neglect to repair." *Hero v. Hankins*, 5 Cir., 247 F. 664, 666. Likewise and to the same effect is *Guidry v. Hamlin*, La.App., 188 So. 662, 664, wherein the Orleans Court of Appeals in a well considered opinion said:

"We note that the word 'ruin' as it appeared in Article 2322 and the word 'fall' in Art. 670. The owner is not made liable under either Article because there is a 'vice' in original construction, unless there is a 'ruin' of the building under one article, or 'fall' of some part of the building under the other. If the framers of the Code had intended to make liability, under either of these articles, depend upon the dangerous design of the building—which is complained of here—they would not have provided that the liability should be made to depend upon the 'ruin' or upon the 'fall' of some part thereof. Art. 2322 is taken directly from the French Civil Code, in which (in Art. 1386) appear the identical word 'ruin' ('ruine'). In the translation of the French Civil Code made by Henry Cochard, who is recognized as an authority on French translation, this word 'ruin' appears as 'destruction'".

*Moczygemba, supra,* at 1152 and n. 6.

Unlike the situation in *Moczygemba* and in other cases where a ruinous condition

has been found, no falling, breaking apart, rending, tearing, destruction, or loss of structural integrity to the water tank occurred in this case. See *Mott v. Odeco, supra* (rung missing from ladder may have caused it to be defective, but ladder remained intact, upright, and fixed in position, and therefore plaintiff's injury was not the result of oil jackets "ruin"); *Davis v. Royal–Globe Ins. Co., supra,* 242 So.2d at 842 (falling paint flakes from an apartment ceiling were never intended by this article to be considered the "ruin" of a building); *Sumner v. Foremost Ins. Co., supra* (wobbly nature of wooden steps located alongside mobile home did not constitute the fall or collapse of a substantial component of the mobile home); *Macalusa v. Pitt Grill, Inc.,* 388 So.2d 97 (La.App. 1st Cir.), *writ refused,* 392 So.2d 1057 (La.1980) (loose stool post alongside counter did not constitute "ruin"). *Compare Hyde v. Chevron USA, Inc.,* 697 F.2d 614 (5th Cir. 1983) (step in staircase was separated from its support on one side and collapsed rendered the staircase/platform a "ruin"); *McIlwain v. Placid Oil Co.,* 472 F.2d 248 (5th Cir.), *cert. denied,* 412 U.S. 923, 93 S.Ct. 2734, 37 L.Ed.2d 150 (1973) (section of graded deck of offshore platform which gave way beneath plaintiff's feet and plummeted into the Gulf of Mexico constituted "ruin"); *Olsen v. Shell Oil Co., supra* (explosion of hot water heater because of the failure of the rig owner to properly repair or to replace a pressure relief valve after warning by safety engineers to do so constituted "ruin" of drilling rig); *Hornsby v. Ray,* 327 So.2d 146 (La.App. 3rd Cir.), *writ refused,* 330 So.2d 293, 319 (1976) (rotten portion of floor which gave way beneath plaintiff causing her leg to slip through the floor to the ground below constituted "ruin").

Therefore, we hold that plaintiff is unable to prove that Amoco is strictly liable to him under Article 2322, and, accordingly, Amoco is entitled to a judgment as a matter of law, dismissing that claim.

D. *Plaintiff's Strict Liability Claim Against Amoco Under Louisiana Civil Code Article 2317.*

Louisiana Civil Code Annotated Article 2317 (West 1979) provides in part:

We are responsible, not only for the damage occasioned by our own act, but for that which is caused by the act of persons for whom we are answerable, or of the things which we have in our custody. . . .

Under this article the plaintiff is required to prove that (1) the thing which caused the damage was in the care and custody of the defendant; (2) the thing had a vice or defect that created an unreasonable risk of injury; and (3) the vice or defect caused plaintiff's injury. *Willis v. Cajun Electric Power Coop, Inc.,* 484 So.2d 726, 729 (La. App. 1st Cir.), *writ denied,* 488 So.2d 200 (La.1986); *Stewart v. Sam Wallace Industries Co.,* 409 So.2d 335 (La.App. 1st Cir. 1981), *writ refused,* 413 So.2d 497 (La. 1982). "Upon proof of these elements, the owner is responsible for the damages, unless he proves that the damage was caused by the fault of the victim, by the fault of a third person, or by an irresistible force." *Entrevia v. Hood,* 427 So.2d 1146, 1148 (La.1983).

Plaintiff argues that Amoco's water tank posed an unreasonable risk of injury to plaintiff and others due to its defective design and construction. Plaintiff claims that the top of the tank failed to properly support his weight, and moreover, the metal first gave in and then suddenly sprang back causing him to be thrown off of the tank. Additionally, he claims that Amoco should have provided a cat walk, railing or some other means for safely walking on top of the tank. Plaintiff submits the testimony of Danny Huval, the affidavit of Henry Buxton, as well as plaintiff's own testimony to support his argument that the tank was defective under La.Civil Code article 2317.

■ Amoco would have us find that plaintiff has failed to establish that a vice or defect existed in the tank top; however, construing the disputed facts most favorably for plaintiff, we are unable to conclude as a matter of law that the condition of the tank top did not pose an unreasonable risk of injury to others. "Issues that

require 'the determination of the reasonableness of the acts and conduct of the parties under all the facts and circumstances of the case, cannot ordinarily be disposed of by summary judgment.'" *Matthews v. Ashland Chemical, Inc.*, 703 F.2d 921, 925–26 (5th Cir.1983) (quoting *Gross v. Southern Ry. Co.*, 414 F.2d 292, 296 (5th Cir.1969)). Whether Amoco's tank had a vice or defect that created an unreasonable risk of injury to others, and whether that vice or defect caused plaintiff's injury, are genuine issues of law and fact for trial.

Therefore, we decline to grant summary judgment against plaintiff regarding his strict liability claim under Article 2317.

CONCLUSIONS:

Accordingly, for the above reasons, we GRANT summary judgment in favor of Devoe and against plaintiff, dismissing plaintiff's negligence and strict liability claims against Devoe. We also GRANT partial summary judgment in favor of Amoco and against plaintiff, dismissing plaintiff's negligence claim and his claim for strict liability under Louisiana Civil Code article 2322. Otherwise, Amoco's Motion for Summary Judgment is DENIED.