Elwin V. AXON

v.

**NOBLE DRILLING CORP., et al.**

Civ. A. No. 90–2254.

United States District Court,
E.D. Louisiana.

July 19, 1991.

---

Wanda Jane Warmack and Ferdinand J. Kleppner, Metairie, La., for plaintiff.

Robert B. Nolan, Adams & Reese, New Orleans, La., for Texaco, Inc.

Peter L. Hilbert, Jr., McGlinchey, Stafford, Cellini & Lang, New Orleans, La., for Nat. Union Fire Ins. Co. of Pittsburgh, Pa.

## ORDER AND REASONS

MENTZ, District Judge.

Before the Court is the Motion for Summary Judgment pursuant to Rule 56(c) of the Federal Rules of Civil Procedure, filed by the defendant, Texaco, Inc. ("Texaco"). After reviewing the motion, memoranda of counsel, the record, and the law, this Court grants the motion for the reasons set out below.

## FACTS

On June 28, 1989, the plaintiff, Elwin Axon, was injured while working on a fixed offshore drilling platform owned by defendant, Texaco. Texaco had contracted with defendant, Noble Drilling Corp. ("Noble"), whereby Noble agreed to use its drilling unit, Platform Rig 30, to perform drilling and workover operations on Texaco's platform. Noble hired Universal Services International ("Universal") to provide catering services for the platform. Mr. Axon, a Universal employee was injured while bringing a box of groceries into the galley. As he was passing through the doorway, the galley door was caught by the wind and struck against his back. Plaintiff also alleges that the door was defective in that it lacked an operational mechanism by which the door could be locked into the open position.

The plaintiff brings suit against Texaco and Noble alleging negligence and strict liability on both their parts under Articles 2315, 2317, and 2322 of the Louisiana Civil Code. In this motion for summary judgment, Texaco seeks dismissal of all claims against them.

## I. SUMMARY JUDGMENT

Pursuant to Rule 54(c) of the Federal Rules of Civil Procedure, the Court may grant summary judgment "if the pleadings, depositions, answers to interrogatories, and

admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." The court finds that there is no genuine issue of material fact on the pertinent issues in this case, and Texaco is entitled to judgment as a matter of law on all claims brought against it by the plaintiff.

## II. THE STRICT LIABILITY CLAIMS

Texaco seeks dismissal of plaintiff's claims that Texaco is strictly liable under Articles 2317 and 2322 of the Louisiana Civil Code. The court finds that neither of these claims has merit.

### A. *Article 2317*

Louisiana Civil Code Article 2317 provides: "We are responsible, not only for the damage occasioned by our own act, but for that which is caused by the act ... of the things which we have in our custody." Strict liability under this article is imposed when "(1) the thing causing damage was in the defendant's custody, (2) the thing had a vice or defect, and (3) the vice or defect occasioned damage." *Ainsworth v. Shell Offshore, Inc.*, 829 F.2d 548, 551 (5th Cir. 1987), *cert. denied*, 485 U.S. 1034, 108 S.Ct. 1593, 99 L.Ed.2d 908 (1988), (*citing Stewart v. Sam Wallace Indus. Co.*, 409 So.2d 335 (La.App. 1st Cir.1981), *writ refused*, 413 So.2d 497 (1982)). Texaco asserts that the plaintiff can not establish that Texaco had custody of the door which was alleged to have caused his injuries.

■ Under Article 2317, "custody" is used to mean supervision and control. *Ainsworth*, 829 F.2d at 551 (citations omitted). In *Ainsworth*, as in this case, Shell Offshore was the owner of an offshore platform and had hired an independent contractor to provide a drilling rig and to drill a well. The court held that Shell was not strictly liable under Article 2317 for injuries to the independent contractor's employee who fell while installing the rig because Shell did not have custody and control of the rig. 829 F.2d at 551.

■ It is not disputed that in this case, the quarters building, including the galley where the plaintiff was injured, was part of Noble's drilling rig. The Drilling Contract between Noble and Texaco provided that Noble would be an independent contractor and would be responsible for the maintenance and repair of the rig. That Texaco may be deemed the owner of the entire rig and platform for the purposes of Article 2322 [1] does not mean that Texaco also had custody of the rig, or the galley door, for the purposes of Article 2317. In fact, nowhere in plaintiff's memorandum in opposition to this motion for summary judgment does the plaintiff assert that Texaco had custody of the galley door. This court finds that Texaco did not have custody of the galley door for the purposes of Article 2317. Accordingly, this court grants Texaco's motion for summary judgment as plaintiff's claim against Texaco under Article 2317.

### B. *Article 2322*

■ Texaco's motion for summary judgment with respect to plaintiff's claim that Texaco is strictly liable for his injuries pursuant to Article 2322 of the Louisiana Civil Code [2] presents a more difficult question. Strict liability under Article 2322 requires proof of the following:

> (1) There must be a building; (2) the defendant must be its owner; and (3) there must be a "ruin" caused by a vice in construction or neglect to repair, which occasions the damages sought to be recovered.

*Olsen v. Shell Oil Co.*, 365 So.2d 1285, 1289 (La.1978); *Walker v. Tenneco Oil Co.*, 615 F.2d 1121, 1123–24 (5th Cir.1980). Texaco alleges that the plaintiff's injuries were not caused by a "ruin." [3]

---

1. *See* Section II–B, n. 3 of this opinion *infra*.

2. La.Civ.Code Art. 2322 provides:
   The owner of a building is answerable for the damage occasioned by its ruin, when this is caused by neglect to repair it, or when it is a result of a vice in its original construction.

3. There is little question that under Louisiana law the drilling platform is considered a building and the Noble drilling rig is an appurte-

The jurisprudence under Article 2322 is hardly a model of clarity.[4] Most courts, however, have read "ruin" to mean the collapsing, giving way or falling of a substantial component of a building. *See Buxton v. Amoco Oil Co.,* 676 F.Supp. 722 (W.D.La.1987); *Tynes v. Haliburton Services, Inc.,* C.A. No. 89–5377, 1991 WL 40261, 1991 U.S.Dist. LEXIS 3591 (E.D.La. March 14, 1991); *Bowles v. Litton Industries, Inc.,* 518 So.2d 1070, 1074 n. 2 (La. App. 5th Cir.1987); *Mott v. ODECO,* 577 F.2d 273 (5th Cir.1978); *Moczygemba v. Danos & Curole Marine Contractors, Inc.,* 561 F.2d 1149 (5th Cir.1977). Plaintiff testified in his deposition that he was injured when the wind caught the galley door and the door struck him on the back. The plaintiff further alleges that the door posed an unreasonable risk of injury because it lacked any mechanism by which it could be secured in the open position. While these allegations may amount to a genuine issue of material fact as to whether the door design was unreasonably dangerous, they do not create any genuine issue of material fact as to whether plaintiff's injuries were caused by a *ruin.* It is clear that plaintiff can not demonstrate that his injuries were caused by the collapsing, giving way, or falling of the door or any part of the rig. Accordingly, this court grants Texaco's motion for summary judgment as the claims against Texaco under Article 2322.

## III. THE NEGLIGENCE CLAIM

Plaintiff has also claimed that Texaco is liable under negligence theory for failing to correct an unsafe condition in the galley area, for failing to provide a safe place for the plaintiff to perform his duties for Universal, and for failing to adequately supervise Noble's operations. It is a basic principle of tort law "that one cannot be liable for failure to act unless one first has a duty to act." *Futo v. Lykes Bros. Steamship Co., Inc.,* 742 F.2d 209, 214 (5th Cir.1984). However, "[u]nder Louisiana law, as a general rule, a principal who employs an independent contractor is normally *not* under a duty to take affirmative action to protect employees of that independent contractor from injury in the course of the contracted-for work." *Buxton,* 676 F.Supp. at 725. Plaintiff alleges that Texaco's duty would arise from the fact that Texaco maintained operational control of the rig, and that a genuine issue of material fact exists as to whether Texaco maintained such operational control.

The court finds that such a genuine issue of material does not exist. Section 701 of the drilling contract between Texaco and Noble provides that Noble is to be an independent contractor.[5] Texaco's representatives also had complete access to the rig for the purposes of observing and inspecting operations to assure compliance with

---

nance of that building. For the purposes of Article 2322, Texaco would be subject to owner's liability for injuries caused by the ruin of the platform or its appurtenances. *Olsen,* 365 So.2d at 1289–92.

**4.** On several occasions, the Louisiana Supreme Court has discussed Article 2322 as creating in the building owner a general non-delegable duty to keep his premises free from unreasonable risks of injury to other people. *Olsen v. Shell Oil Co.,* 365 So.2d 1285, 1292 (La.1978); *Entrevia v. Hood,* 427 So.2d 1146, 1148–49 (La.1983); *Sistler v. Liberty Mutual Insur. Co.,* 558 So.2d 1106, 1112 (La.1990). While these opinions may state the underlying justification for imposing strict liability on building owners, this court declines to follow plaintiff's suggestion to interpret those cases as eliminating Article 2322's "ruin" requirement. In fact, in *Olsen,* the Louisiana Supreme Court noted that it remains as law that "an owner is liable under Article 2322 for injuries resulting from a defective condition *which causes a breaking or explosion of an ap-*

*purtenant or component part of the building."* 365 So.2d at 1293 (emphasis added).

**5.** Section 701 provides:

In the performance of this work, CONTRACTOR is an independent contractor and shall control and direct the performance of the details of the work and shall be responsible for the results hereunder. However, the resultant work and express objectives contemplated herein or specified in well drilling programs or other instructions from TEXACO shall meet the approval of TEXACO and be subject to the general rights of observation and inspection herein reserved to TEXACO in order to secure the satisfactory completion thereof. The presence of and the observation an inspection by TEXACO's representative at the site shall not relieve CONTRACTOR from CONTRACTOR's obligations and responsibilities. Texaco's Motion for Summary Judgment, Exhibit 3.

the contract. Courts have consistently held that the mere presence on the platform of a "company man," who periodically inspects the jobsite to ensure that work is being performed in accordance with contract, is not sufficient to prove operational control. *Ainsworth*, 829 F.2d at 550; *Buxton*, 676 F.Supp. at 727; *Pemberton v. Daigle Welding Service, Inc.*, C.A. No. 88–2896, 1980 WL 8156, 1990 U.S.Dist. LEXIS 1565 (E.D.La. February 14, 1990).

Plaintiff also asserts that in § 509.2 of the contract Texaco specifically retained its right to supervise the drilling operations. This section, however, falls under the heading "Texaco's Right to Assume Control of Operations." Thus, § 509.1 provides Texaco with the right to take over drilling operations in the event Noble ceases operations, and § 509.2 only sets out the responsibilities of both parties in light of such an event. When read in context, § 509.2 does not confer general operational control upon Texaco, but simply protects Texaco's ability to continue operations in the event that Noble ceases to perform its obligations.

The drilling contract directed that Noble "shall control and direct the performance of the details of the work and shall be responsible for the results thereunder;" while Texaco retained the right to ensure that Noble complied with the contract, that right does not amount to operational control of the platform and rig. Thus, Texaco had no duty with respect to the plaintiff, and plaintiff's negligence claim must be dismissed as well.

Accordingly;

IT IS ORDERED that

(1) Texaco's Motion for Summary Judgment is GRANTED and plaintiff's claims against the defendant Texaco, Inc. are DISMISSED with prejudice; and

(2) the hearing on the above motion set for July 17, 1991 is CANCELED.