545 So.2d 1154 (1989)
Dr. Harley GINSBERG
v.
Dr. Mark HONTAS and ABC Insurance Company.
No. 88-CA-2326.
Court of Appeal of Louisiana, Fourth Circuit.
June 8, 1989.
*1155 Bruce C. Walzter, Paul S. Weidenfeld, New Orleans, for plaintiff-appellant Dr. Harry Ginsberg.
Basile J. Uddo, S.C. Garcia, III, Covington, for defendant-appellee Dr. Mark Hontas.
Before GARRISON, KLEES and WILLIAMS, JJ.
KLEES, Judge.
Plaintiff appeals the dismissal of this personal injury suit after the trial court found in favor of the defendant. We affirm.
This case arises out of an accident which occurred during a recreational softball game at City Park in New Orleans between faculty, staff and residents from Tulane Medical School on June 2, 1985. The game was officiated by one umpire who was applying major league rules, which included the allowance of sliding. At the time of the accident, plaintiff, Dr. Harley Ginsberg, played the short-stop position and defendant, Dr. Mark Hontas, was at bat. Defendant hit the ball into right field and ran to first base. Upon seeing that the right fielder had trouble catching the ball, defendant proceeded toward second base. Plaintiff was covering second base straddling the bag with his left foot on the left field side, his right foot on second base and the back-half of his left foot in the base line, awaiting the throw from the right fielder. Realizing that it was going to be a close play, defendant attempted to slide to reach second base. As plaintiff attempted to tag the defendant, a collision occurred between them. As a result, plaintiff fractured his right leg which required two operations, hospitalization, a cast and physical therapy.
Plaintiff filed suit against the defendant seeking to recover damages he sustained as a result of the accident. After a trial on the merits, the trial judge dismisssed the case finding that the plaintiff failed to prove that the defendant acted negligently and that the plaintiff assumed the inherent risks of injury associated with participating in the ball game.
Louisiana jurisprudence dictates that in a tort action courts are to apply a "duty risk" analysis to determine whether a defendant's conduct was the legal cause of the plaintiff's injury. Hill v. Lundin & Associates, Inc., 260 La. 542, 256 So.2d 620 (1972). Under a duty risk analysis, there are the following inquiries: (1) What, if any, duty was owed by the defendant to the plaintiff? (2) Was there a breach of the duty? (3) Was that breach a substantial cause in fact of the injury? (4) Was the risk and harm within the scope of the protection afforded by the duty breached? Jones v. Robbins, 289 So.2d 104 (La.1974); Hill v. Lundin & Associates, Inc., supra.; Annis v. Shapiro, 517 So.2d 1237 (La. 4th Cir.1987). Whether a defendant owes a plaintiff a legal duty is a question of law. Whether a defendant has breached a duty owed is a question of fact. Chavez v. Nobel Drilling Corp., 567 F.2d 287 (5th Cir.1978).
The duty owed by the defendant in the instant matter is a common duty, the duty to act reasonably under the circumstances. In this softball game defendant owed plaintiff the duty to act reasonably, that is, to play fairly according to the rules of the game and to refrain from any wanton, reckless conduct likely to result in harm or injury to another.
Under a duty risk analysis, plaintiff bears the burden of proving by a preponderance of the evidence that the defendant violated an imposed duty and acted unreasonably causing injury. Blanchard v. Riley Stoker Corp., 492 So.2d 1236 (La.App. 4th Cir.1986).
*1156 On appeal, plaintiff contends that the defendant acted unreasonably by sliding not head first into second base but rather throwing a roll block or cross body block while attempting to reach the base.
The basis of plaintiff's case is a photograph introduced into evidence marked plaintiff's exhibit no. 1. The photograph was taken during the ball game and depicts the play in question at the time of impact. Mr. Don Moreau, an umpire and baseball coach testified on behalf of the plaintiff. He testified that as an umpire he officiated softball games pursuant to major league rules. He testified that a roll block and a side block would be prohibited in sliding but a head first slide into second base would be permitted. Mr. Moreau opined that from his view of the photograph, the defendant slid into second base by way of a body block rather than a head first slide.
Dr. William Gill, head of the Neonatology Department at Tulane, also testified on behalf of the plaintiff. He testified that he was the pitcher for the plaintiff's team when the accident occurred. Dr. Gill stated that the defendant slid into second base in a position that he best described as a body block. He said that it was not a slide per se in that the defendant made no body contact with the ground either sliding head or feet first. In describing the defendant's sliding technique, Dr. Gill stated the defendant went into second base sideways with his head pointed toward third base. He further testified that when the two players made actual contact, the defendant's body had not yet touched the ground. When they collided the plaintiff's body fell across the defendant's body, falling in the direction of first base.
Mr. Don Albro, stipulated to as an expert in the field of officiating softball games, testified that he had umpired the game in question. He stated that sliding was permitted but that players who threw roll or body blocks would have been expelled from the game. Regarding the particular play that resulted in plaintiff's injury, Mr. Albro acknowledged that he called the defendant runner safe at second base and opined that the defendant was not airborne when the players collided. He also testified that he neither warned the defendant for obstruction of play action nor expelled him from the game.
Mr. Ron Maestri, Athletic Director at the University of New Orleans and former head baseball coach for UNO, testified as an expert witness regarding the game and rules of baseball. Mr. Maestri testified that if plaintiff's right foot was on the front of the base and left foot facing the outfield, he would have been in an improper position and more susceptible to injury. When he viewed the photograph, Mr. Maestri opined that the defendant's slide into second base was not a cross body block because the position of the defendant's body was facing second base with this feet extended towards first base and his head positioned towards second base, completely refuting Dr. Gill's testimony.
Professional Photographer, Mr. Michael Posey, also testified at trial as an expert in the field of photography and interpretation of photographs. Mr. Posey testified that the photograph in question was taken at 1/16 to 1/10 of a second. He stated that you could not ascertain what happened immediately before or after the camera shutter closed. He concluded that the fraction of a second captured on the film in this case showed that the defendant was not perpendicular to the baseline but rather parallel to it indicating a head first slide. During the examination of the photograph at trial, Mr. Posey used an instrument called a loop glass. The loop glass magnified the photograph, and it revealed the appearance of dust to the right of the defendant runner and towards first base, suggesting that the defendant slid along the grass on the field. Contrary to Dr. Gill's testimony, Mr. Posey stated defendant's head and shoulder were on the ground near the base indicating that the defendant was not airborne.
Dr. Stephan Cook, a biomechanical engineer, testified as an expert in the area of biomechanics. He stated that defendant's rotated body position depicted in the photograph is consistent with someone who had executed a head first slide. On cross examination he reiterated, "The position, it *1157 appears from a head first slide, that is the type of position you would expect." When asked if it was possible that it could have started out as a roll block, he stated "Well, if it was a roll back, I wouldn't have expected, you know, the turns. We would have expected him to be twisted a little more. This appears his shoulder is down from the contact and attempting to turn his body and flip it around."
In light of the evidence before us, we neither find that the plaintiff has proved by a preponderance of the evidence that the defendant was negligent in his play during the softball game on June 2, nor that the defendant breached any duty he may have owed to the plaintiff. The record is devoid of evidence which would suggest that the defendant acted wantonly, recklessly or with total disregard for the safety of the plaintiff. It indicates that he acted reasonably and played according to the rules in effect at the time. Factual conclusions of the trial court are entitled to great weight as the trial court is in a better position to evaluate the credibility of witnesses, and an appellate court should not disturb those conclusions unless they are clearly erroneous. Arceneaux v. Dominque, 365 So.2d 1330 (La.1978). We find there was a reasonable factual basis to support the conclusion that the defendant did not act negligently during the softball game.
Accordingly, the judgment of the trial court is affirmed.
AFFIRMED.