558 So.2d 787 (1990)
Julian PICOU and Sandra Picou
v.
The HARTFORD INSURANCE COMPANY.
No. 89-CA-696.
Court of Appeal of Louisiana, Fifth Circuit.
March 14, 1990.
*788 Gordon Hackman, Boutte, for plaintiffs/appellants, Julian and Sandra Picou.
Frederick A. Miller, New Orleans, for defendant/appellee, Hartford Acc. and Indem. Co.
Before BOWES, GAUDIN and DUFRESNE, JJ.
BOWES, Judge.
Plaintiffs-appellants, Sandra and Julian Picou, appeal a judgment of the district court in favor of defendant, The Hartford Insurance Company, dismissing their case. We affirm.
Sandra Picou was a member of the Mennonite Church softball team, and, on May 19, 1987, played second base for Mennonite in the "Women's Christian Softball League." Defendant's insured, Marguerite (sometimes called "Meagan" in the proceedings) Mongrue, was a member of the opposing team from Holy Family. On the day in question, Ms. Mongrue was the runner at first base when another member of her team hit the pitched ball to center field. Ms. Picou, attempting to cover second base, caught the ball from the center fielder. As she did so, Ms. Mongrue ran to second base and either collided with Ms. Picou, or slid or dove into second base, causing Ms. Picou to fall off balance and injure her ankle. Ms. Picou underwent surgery and was in a cast for 14 weeks; she has residual physical problems stemming from the injury. This suit for damages alleging negligence or a violation of a duty on the part of Ms. Mongrue followed, after the incident described above.
Trial on the merits was held on March 28, 1989, and, after taking the case under advisement, the trial court rendered judgment in favor of the defendant, stating in her reasons for judgment as follows:
In order for plaintiff to recover, she must establish by a preponderance of the evidence that defendant acted in an unexpected and unsportsmanlike way with a reckless lack of concern for others' safety. See Novak v. Lamar Ins. Co., 488 So.2d 739 (La.App. 2 Cir.1986) and Ginsberg v. Houtas, [sic], No. 88-CA-2326 [545 So.2d 1154] (4th Cir. June 8, 1989). The standard of care to which the defendant is held is that of a reasonably prudent base runner attempting to gain second base.
None of the various versions of how the accident occurred is sufficient to meet the requirements of establishing defendant's conduct violated the standard of care required of her.
Plaintiffs have perfected the present appeal from that judgment.
On appeal, plaintiffs have averred that the trial court erred in:
1. Finding no duty of a base runner to avoid striking a base player from the rear;
2. Applying a general rule on sports injuries to an injury that occurred when plaintiff was struck from the rear;
3. Failing to give meaningful findings of fact and reasons for judgment;
4. Assessing costs against plaintiffs.
Along with the judgment and reasons for judgment, the trial court attached a chart outlining the testimony of various witnesses *789 who perceived the accident, which we designate as an appendix to this opinion. The chart accurately summarizes the salient portions of the witnesses' testimony. In addition, our review of the transcript has revealed additional testimony, which we find relevant, such as the following:
1) Jamie Cortez, witness for the plaintiff and umpire, testified that plaintiff had her back to the runner and that defendant collided with the plaintiff.
2) Meagan Mongrue, the defendant, testified that she had no intention of making contact with the plaintiff.
3) Mickey Falgoust, defense witness and a player for Holy Family, testified that the defendant fell first and that plaintiff fell on top of her.
4) Sandy Voros Johnson, defense witness and a player for Holy Family, testified that defendant slid, feet first, between plaintiff's legs.

DUTY RISK
Cases such as the present one, in which plaintiff and defendant have been voluntary participants in sporting activities, have traditionally been decided using the theory of assumption of the riskdid the plaintiff assume the risk encountered in the activity? See e.g., Bourque v. Duplechin, 331 So.2d 40 (La.App. 3 Cir.1976).
However, our Supreme Court abrogated the defense of assumption of the risk in the relatively recent decision of Murray v. Ramada Inns, Inc., 521 So.2d 1123 (La.1988). There the Court said:
"... we believe that the courts, lawyers and litigants would best be served by no longer utilizing the term assumption of the risk to refer to plaintiff conduct."
Rather, the Court found that cases involving voluntary participation in certain types of activities will turn on their particular facts and may be analyzed in terms of duty/risk, id., at p. 1135:
Nor does our decision today mean that the result reached in the sports spectator or amusement park cases (common law's "implied primary" assumption of risk cases) was incorrect. However, rather than relying on the fiction that the plaintiffs in such cases implicitly consented to their injuries, the sounder reasoning is that the defendants were not liable because they did not breach any duty owed to the plaintiffs.

. . . . .
Even while applying assumption of risk terminology to these types of cases, courts have simultaneously recognized that the defendant was not negligent because his conduct vis-a-vis the plaintiff was not unreasonable.

. . . . .
The same [duty risk] analysis applies in other cases where it may not be reasonable to require the defendant to protect the plaintiff from all of the risks associated with a particular activity. See, e.g., Bonanno v. Continental Casualty Co., 285 So.2d [591] at 592 [(La.App. 4 Cir.)] (operator of haunted house provided adequate supervision and space for patrons, and therefore was not negligent).
In Bourque, supra, even though the court discussed the facts of that case in terms of what risks were assumed by the plaintiff, it further discussed the duty involved in playing a softball game:
There is no question that defendant Duplechin's conduct was the cause in fact of the harm to plaintiff Bourque. Duplechin was under a duty to play softball in the ordinary fashion without unsportsmanlike conduct or wanton injury to his fellow players. This duty was breached by Duplechin, whose behavior was, according to the evidence, substandard and negligent.

. . . . .
A participant does not assume the risk of injury from fellow players acting in an unexpected or unsportsmanlike way with a reckless lack of concern for others participating.
Put another way, players have a duty to play with sportsmanlike conduct, according to the rules of the game and with regard for the other participants.
*790 A virtually identical analysis can be found in Novak v. Lamar Ins. Co., 488 So.2d 739 (La.App. 2 Cir.1986), in which the Second Circuit determined the case in terms of assumption of the risk:
A participant in a game or sport assumes all of the risks incidental to that particular activity which are obvious and foreseeable. A participant does not assume the risk of injury from fellow players acting in an unexpected or unsportsmanlike way with a reckless lack of concern for others participating.
Translated for purposes of our duty/risk analysis, participants have the duty to play the game in a reasonable manner, refraining from acts which are unexpected, unforeseeable, or which evidence reckless disregard for other players.
The latest expression of the duty involved in such cases is Ginsberg v. Hontas, 545 So.2d 1154 (La.App. 4 Cir.1989), writ denied 550 So.2d 631 (La.1989), in which the court discussed the duty involved:
Louisiana jurisprudence dictates that in a tort action courts are to apply a "duty risk" analysis to determine whether a defendant's conduct was the legal cause of the plaintiff's injury. Hill v. Lundin & Associates, Inc., 260 La. 542, 256 So.2d 620 (1972). Under a duty risk analysis, there are the following inquiries: (1) What, if any, duty was owed by the defendant to the plaintiff? (2) Was there a breach of the duty? (3) Was that breach a substantial cause in fact of the injury? (4) Was the risk and harm within the scope of the protection afforded by the duty breached? Jones v. Robbins, 289 So.2d 104 (La.1974); Hill v. Lundin & Associates, Inc., supra.; Annis v. Shapiro, 517 So.2d 1237 (La. 4th Cir.1987). Whether a defendant owes a plaintiff a legal duty is a question of law. Whether a defendant has breached a duty owed is a question of fact. Chavez v. Nobel Drilling Corp., 567 F.2d 287 (5th Cir.1978).
The duty owed by the defendant in the instant matter is a common duty, the duty to act reasonably under the circumstances. In this softball game defendant owed plaintiff the duty to act reasonably, that is, to play fairly according to the rules of the game and to refrain from any wanton, reckless conduct likely to result in harm or injury to another.
Under a duty risk analysis, plaintiff bears the burden of proving by a preponderance of the evidence that the defendant violated an imposed duty and acted unreasonably causing injury. Blanchard v. Riley Stoker Corp., 492 So.2d 1236 (La.App. 4th Cir.1986).
The district court used the standards enunciated in Novak and Ginsberg, supra, in finding that the standard of care to which the defendant was held is "that of a reasonably prudent base runner attempting to gain second base." We agree with her conclusion, based on the evidence adduced at trial, that none of the various versions of the accident established that Ms. Mongrue's conduct violated the standard of care required of her. In so doing, we reiterate and adopt the standard of care discussed aboveparticipants in these (sports) activities have a duty to play in a reasonable and sportsmanlike manner, according to the rules of the game, and to refrain from acts which are unforeseeable and which evidence wanton or reckless disregard for the other participants. Under this standard, we agree that Ms. Mongrue, while an enthusiastic player, did not act in an unreasonable or unsportsmanlike manner. The risk of the type of accident which occurred, whether Ms. Mongrue slid head first, feet first, or ran to second base, is inherent in the game. The Second Circuit quoted from its adoption of the trial court's facts in Novak, and we find it appropriate to recite here:
"A runner must touch the base, and there is nothing illegal or unsportsmanlike in being partially inside the base line at the bag. The closer the play, the more likely a collision; and the runner is not obliged to sacrifice himself or `surrender' an out by running outside the line to avoid collision with a fielder in close proximity to the base. Accordingly, the closer the play, the more wary and self-protective the fielder must be to catch the ball while in contact with the *791 base so as to remove himself with dispatch, sometimes almost by reflex.
"Such a play occurred here; and Fitts was not negligent. The situation was simply an inherent part of the game: ...
Nothing in the record before us leads us to conclude that Ms. Mongrue played recklessly or that she attempted to knock down the plaintiff. The accident and resultant injury are the unfortunate result of two women who played the softball game competitively and, we find, with diligence. Contrary to appellant's assertions, we find nothing in the rules, designated "Softball Playing Rules", promulgated by the "Amateur Softball Association of America," introduced into evidence, which would support their position that defendant violated the rules. As one of plaintiff's coaches testified, upon referring to the rules, "Contact is allowed ... If it is deliberate action, then the person is declared out. They can be thrown out of the game if it is definitely deliberate action." Our reading of the rules reinforces this opinion that conduct of the player coming in contact with another player must be deliberate in order to be violative of the rules. The trial judge apparently concluded, as do we, that nothing evidences a deliberate intention on the part of Ms. Mongrue to collide with Ms. Picou.
There was a reasonable factual basis to support the conclusion of the trial court that the defendant did not act negligently during the softball game, and the trial court was not clearly erroneous in so finding.

REASONS FOR JUDGMENT
Appellant filed a motion in this court requesting this court to order the trial court to "render meaningful findings of fact and reasons for judgment." We denied the motion on December 7, 1989, finding that the reasons "are in detail and perfectly adequate and in compliance with the requirements of law." Therefore, we decline to address this assignment of error any further.

COSTS
The trial court assessed all costs to the plaintiff. LSA-C.C.P. art. 1920 states:
Unless the judgment provides otherwise, costs shall be paid by the party cast, and may be taxed by a rule to show cause.
Except as otherwise provided by law, the court may render judgment for costs, or any part thereof, against any party as it may consider equitable.
LSA-C.C.P. art. 5188 states:
Except as otherwise provided by Articles 1920 and 2164, if judgment is rendered against a party who has been permitted to litigate without payment of costs, he shall be condemned to pay the costs incurred by him, and those recoverable by the adverse party.
LSA-C.C.P. art. 2164 states in pertinent part:
The appellate court ... may tax the costs of the lower or appellate court, or any part thereof, against any party to the suit, as in its judgment may be considered equitable.
We find no abuse of discretion in the assessment of costs against plaintiff.
Accordingly, the judgment of the trial court in favor of defendant, finding no violation of the proper standard of care and dismissing plaintiff's case, is affirmed.
AFFIRMED.

APPENDIX A

NAME TEAM/POSITION/ LOCATION AT PLAINTIFF'S DEFENDANT'S MISCELLANEOUS
 WITNESS TIME OF COLLISION POSITION AT APPROACH/
 FOR TIME OF COLLISION MANNER/
 BEFORE
 COLLISION
------------------------------------------------------------------------------------------------------------------------------------------------------------------------
Sandra Picou (Plaintiff) Mennonite/Second/ Defending second Left foot (toes Defendant Knew defendant was
 Plaintiff base only) was on the "Dove" at base as an aggressive player
 edge of the bag she ran to second. and that she was
 at 2nd and right Upper or heavier coming from 1st to
 foot was extended portion of defendant's 2nd.
 out toward body hit
 center. plaintiff's leg

*792
NAME TEAM/POSITION/ LOCATION AT PLAINTIFF'S DEFENDANT'S MISCELLANEOUS
 WITNESS TIME OF COLLISION POSITION AT APPROACH/
 FOR TIME OF COLLISION MANNER/
 BEFORE
 COLLISION
------------------------------------------------------------------------------------------------------------------------------------------------------------------------
 Had back to defendant. from the knee
 down. First impact
 was plaintiff's
 upper thigh,
 (indicating perhaps
 that defendant
 wasn't sliding.)
------------------------------------------------------------------------------------------------------------------------------------------------------------------------
Patricia Hackman Mennonite/Short stop Had just fielded a Direct: Plaintiff As plaintiff ** In deposition she
Reno or Center field/Plaintiff ball and was had one foot on caught ball defendant said she didn't think
 throwing it to the bag and one came into the foot extended
 plaintiff; was in foot toward 2nd; part of defendant's into base line.
 outfield toward Reno in the outfield. body
 center. Plaintiff struck plaintiff's
 was facing body. Top part
 Reno with back hit plaintiff's side.
 to defendant.
 Cross: Does not
 remember
 where plaintiff's
 right foot
 was.**
------------------------------------------------------------------------------------------------------------------------------------------------------------------------
Kenneth Treichler Mennonite/Spectator; On bench between Plaintiff was Direct: Defendant Defendant was playing
 wife was pitcher/ third and facing left field was diving toward a little rougher
 Plaintiff home. and she turned the base and than necessary for a
 around and plaintiff came to church group, caught
 jumped in the the base at the up in competitiveness.
 air to catch the same time.
 ball. Plaintiff Cross: Defendant
 had back to defendant was going down
 to catch as she came to the
 ball but was base. "She just
 face on with her wanted to get
 as she was coming there before the
 toward the ball did." Defendant's
 base. left side hit
 plaintiff on the
 leg. Doesn't
 know whether she
 tripped.
------------------------------------------------------------------------------------------------------------------------------------------------------------------------
Phyllis Whittington Mennonite/Catcher Sitting on sidelines Direct: Plaintiff Sort of dove toward ** Deposition states
 or Scorekeeper that had her back base, hitting does not really know
 day/Plaintiff turned to catch plaintiff around where plaintiff's feet
 a ball; had one the ankle. were.
 leg out toward
 front of her and
 the left leg on
 the base.
 Cross: Plaintiff
 had left foot on
 base when accident
 occurred.**
------------------------------------------------------------------------------------------------------------------------------------------------------------------------
Jamie Cortez Umpire/Plaintiff Home plate Can't remember** Running to 2nd ** Written statement
 base of 12/2/89 states
 plaintiff had her back
 turned.
------------------------------------------------------------------------------------------------------------------------------------------------------------------------
Jeffrey W. Sassin Mennonite/ Standing between Direct: One Direct: Defendant ** Deposition states
 Coach/Defense third and foot was on the attempted to slide not sure where her
 home. base and the 3' from first base, feet were, but one
 other was between feet first and she was staggered off in
 1st and toppled over head base line and that either
 2nd just off first and the upper defendant's foot
 edge of the part of her dug into dirt or hitting
 base in the base body collided with plaintiff's foot
 line. Plaintiff plaintiff's body. caused defendant to
 was not positioned Ground was hard topple over.
 in the and uneven and
 proper way. there was a hole.
 Cross: Left Cross: Upper part
 foot in base of defendant's
 line.** body struck plaintiff
 across in the
 legs from left to
 right. She started
 to slide and
 then she hit something
 causing her
 to go over head
 first.

*793
NAME TEAM/POSITION/ LOCATION AT PLAINTIFF'S DEFENDANT'S MISCELLANEOUS
 WITNESS TIME OF COLLISION POSITION AT APPROACH/
 FOR TIME OF COLLISION MANNER/
 BEFORE
 COLLISION
------------------------------------------------------------------------------------------------------------------------------------------------------------------------
Karen Fredericks Mennonite/Third At third base Doesn't know Defendant was Did not see actual
 base/Defense running and diving contact.
 to 2nd base.
------------------------------------------------------------------------------------------------------------------------------------------------------------------------
Meagan Mongrue Holy Family/Base Running to second Doesn't recall Ran to second,
(Defendant) runner/Defense collision of any touched base;
 kind. doesn't recall sliding.
 Cross: Doesn't recall
 being on the
 ground.
------------------------------------------------------------------------------------------------------------------------------------------------------------------------
Mickey Falgoust Holy Family/Defense Sitting on sidelines Plaintiff was Went feet first between At deposition unsure
 between straddling bag, plaintiff's if any parts hit.
 home and first. looking toward legs. Not a good
 right field, her slide.
 right foot toward
 home and
 1st and her left
 foot toward outfield.
------------------------------------------------------------------------------------------------------------------------------------------------------------------------
Brenda Myers Holy Family/Defense Coaching 1st, encouraging Direct: They Was standing up
Brown defendant just ran into when she got to
 to run. each other, the base. Never
 knocking plaintiff was on ground.
 down.
 Cross: Plaintiff
 was on the back
 right corner of
 the bag trying
 to catch the
 ball. Doesn't
 know if plaintiff's
 back was
 turned nor if
 her foot was on
 the base.
------------------------------------------------------------------------------------------------------------------------------------------------------------------------
Sandy Voros Johnson Holy Family/Defense Direct: Standing Slid to 2nd, under ** Deposition testimony
 in front of plaintiff. is that she
 base in base didn't know where
 line. plaintiff was standing.
 Cross: Standing
 in base line between
 1st and
 2nd.**