KEVIN PAUL LEBOEUF, INDIVIDUALLY, AND ON BEHALF OF HIS MINOR CHILD, KEVIN PAUL LEBOEUF, JR.
v.
BRYAN LECOMPTE, ABC INSURANCE COMPANY, THE TERREBONNE PARISH CONSOLIDATED GOVERNMENT, TERREBONNE PARISH RECREATION DISTRICT NUMBER 11, AND THE AIG GROUP, INC.
No. 2008 CA 1402.
Court of Appeals of Louisiana, First Circuit.
February 13, 2009.
Not Designated for Publication
STANWOOD R. DUVAL, Attorney for Plaintiff-Appellant, Kevin Paul LeBoeuf, Individually, and on behalf of his Minor Child, Kevin Paul LeBoeuf, Jr.
SIDNEY W. DEGAN, TRAVIS L. BOURGEOIS, JOSEPH E. LEE, Attorneys for Defendants-Appellees, Terrebonne Parish Consol. Govt., Terrebonne Parish Rec. Dist. No. 11, and AIG Group, Inc.
J. CHRISTOPHER EMY, Attorney for Defendant, Bryan LeCompte.
HERVIN A. GUIDRY, Attorney for Defendant, AIG Life Ins. Co.
Before: CARTER, C.J., WHIPPLE and DOWNING, JJ.
CARTER, C. J.
Plaintiff, Kevin Paul LeBoeuf,[1] appeals the granting of a partial summary judgment in favor of defendants, Terrebonne Parish Consolidated Government and Terrebonne Parish Recreation District Number 11 (collectively referred to as "Terrebonne Parish"), dismissing all of his claims against Terrebonne Parish with prejudice.[2] For the following reasons, we affirm the trial court judgment.

FACTS
On June 18, 2003, Kevin LeBoeuf was playing in a nighttime softball game in an adult league run by Terrebonne Parish, and on a field owned, operated, maintained, and supervised by Terrebonne Parish. Mr. LeBoeuf was a runner at first base when another member of his team hit the pitched ball near second base. As the other team's shortstop, second baseman, Bryan LeCompte, and shortfielder all converged on the ball attempting to make a double play, Mr. LeBoeuf ran toward and slid into second base, where he collided with Mr. LeCompte. The parties do not dispute Mr. LeBoeuf suffered broken bones in his right leg and right elbow, with both fractures requiring surgery to repair. Mr. LeBoeuf has residual physical problems stemming from his injuries.
This lawsuit for damages followed, alleging negligence or a violation of a duty on the part of Terrebonne Parish and Mr. LeCompte. More specifically, Mr. LeBoeuf alleged that Terrebonne Parish failed to properly supervise and adequately warn, control and monitor the players in the league, failed to properly inform the players of softball rules, and failed to adequately ensure that the players followed the rules. As for Mr. LeBoeuf's claims against Mr. LeCompte and his homeowner insurer, he alleged that Mr. LeCompte negligently "tackled" him, played in an unsportsmanlike manner with reckless and wanton conduct, and did not follow the rules of softball. Mr. LeCompte answered the petition, generally denying Mr. LeBoeuf's allegations. Terrebonne Parish also denied Mr. LeBoeuf's allegations in its answer, and then filed a motion for summary judgment, asserting that Mr. LeBoeuf could not satisfy his burden of proving that Terrebonne Parish had breached its legal duty of keeping its premises in a reasonably safe condition for those who use them or acted unreasonably, thereby causing Mr. LeBoeuf's injuries.[3]
After hearing argument on the motion, the trial court granted Terrebonne Parish's motion for partial summary judgment on June 26, 2007, dismissing all of Mr. LeBoeuf's claims against Terrebonne Parish. Mr. LeBoeuf appeals arguing that the trial court erred in granting Terrebonne Parish's summary judgment, because there were genuine issues of material fact regarding Terrebonne Parish's duty to supervise and inform the players of the rules of softball.

LAW AND ANALYSIS

Summary Judgment
A motion for summary judgment is properly granted if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to material fact and that the mover is entitled to judgment as a matter of law. LSA-C.C.P. art. 966B.
Pursuant to LSA-C.C.P. art. 966C(2), the burden of proof remains with the movant. However, if the moving party will not bear the burden of proof on the issue at trial and points out that there is an absence of factual support for one or more elements essential to the adverse patty's claim, action or defense, then the non-moving party must produce factual support sufficient to establish that he will be able to satisfy his evidentiary burden of proof at trial. If the opponent of the motion fails to do so, there is no genuine issue of material fact and summary judgment will be granted. Cressionnie v. Intrepid, Inc., 03-1714 (La. App. 1 Cir. 5/14/04), 879 So.2d 736, 738. Moreover, as consistently noted in LSA-C.C.P. art. 967, the opposing party cannot rest on the mere allegations or denials of his pleadings, but must present evidence which will establish that material facts are still at issue. Id.
In determining whether summary judgment is appropriate, appellate courts review evidence de novo under the same criteria that govern the trial court's determination of whether summary judgment is appropriate. Because it is the applicable substantive law that determines materiality, whether a particular fact in dispute is material can be seen only in light of the substantive law applicable to this case. Id., 879 So.2d at 738-739.

Duty-Risk Analysis
Cases such as this, in which the parties have been voluntary participants in sporting activities, turn on their particular facts and are analyzed in terms of the duty-risk analysis to determine whether a defendant's conduct was the legal cause of the plaintiffs injury. See Picou v. Hartford Ins. Co., 558 So.2d 787, 789-790 (La. App. 5 Cir. 1990); Ginsberg v. Hontas, 545 So.2d 1154, 1155 (La. App. 4 Cir.), writ denied, 550 So.2d 631 (La. 1989). Under a duty-risk analysis, there are the following inquiries: (1) what, if any, duty was owed by the defendant to the plaintiff?; (2) was there a breach of the duty?; (3) was that breach a substantial cause in fact of the injury?; and (4) was the risk and harm within the scope of the protection afforded by the duty breached? Picou, 558 So.2d at 790 (quoting Ginsberg, 545 So.2d at 1155). Under the duty-risk analysis, all four inquiries must be affirmatively answered for plaintiff to recover. Id. Whether a defendant owes a plaintiff a legal duty is a question of law, and whether a defendant has breached a duty owed is a question of fact. Id. Therefore, under a duty-risk analysis in this case, Mr. LeBoeuf bears the burden of proving by a preponderance of the evidence that Terrebonne Parish violated an imposed duty and acted unreasonably causing injury.
Voluntary participants in sporting activities have a duty to play in a reasonable and sportsmanlike manner, according to the rules of the game, and to refrain from acts which are unforeseeable and which evidence wanton or reckless disregard for the other participants. Picou, 558 So.2d at 790. In general, the owner or operator of a sports facility has the duty of exercising reasonable care for the safety of persons on the premises and the duty of not exposing participants in the sporting activities to unreasonable risks of harm or injury. See Mosley v. Temple Baptist Church of Rustou, Louisiana, Inc., 40,546 (La. App. 2 Cir. 1/25/06), 920 So.2d 355, 357. It is well-established that a municipality must exercise ordinary and reasonable care in the maintenance and operation of its public parks, playgrounds, and recreational areas, including softball fields. Politz v. Recreation and Park Com'n for Parish of East Baton Rouge, 619 So.2d 1089, 1093 (La. App. 1 Cir.), writ denied, 627 So.2d 653 (La. 1993); Shipley v. Recreation and Park Com'n for Parish of East Baton Rouge, 558 So.2d 1279, 1282 (La. App. 1 Cir.), writ denied, 565 So.2d 947 (La. 1990); Godfrey v. Baton Rouge Recreation and Parks Commission, 213 So.2d 109, 113 (La. App. 1 Cir.), writ refused, 252 La. 958, 215 So.2d 128 (1968).
The municipality is not the insurer of the safety of those making use of its facilities, nor is it required to eliminate every source or possibility of danger. Politz, 619 So.2d at 1093; Shipley, 558 So.2d at 1282; Godfrey, 213 So.2d at 113. Rather, the municipality is held to the same degree of care in the performance of its obligations arising from ownership as any other person in possession and control of land  to use reasonable or ordinary care to keep the premises in reasonably safe condition for those using them. Politz, 619 So.2d at 1093; Godfrey, 213 So.2d at 113. Furthermore, Louisiana law is clear that there is no duty to protect against or control the actions of a third party unless a special relationship exists to give rise to such a duty. Mosley, 920 So.2d at 357. Likewise, a sports facility operator owes no duty to voluntary participants to protect them from reasonable risks inherent in participation in the sport. Lambert v. Wheels "R" Rolling Skate Center, Inc., 552 So.2d 732, 734 (La. App. 1 Cir. 1989), writ denied, 556 So.2d 1265 (La. 1990).
Terrebonne Parish maintains that Mr. LeBoeuf failed to provide any evidence that it had acted unreasonably in keeping its premises in a reasonably safe condition for the Softball players. Mr. LeBoeuf testified in his deposition that he was not claiming there was anything wrong with the Softball field or that Mr. LeCompte had intentionally injured him. Mr. LeBoeuf asserts, however, that Terrebonne Parish had a duty to control the actions of the players on its softball fields since it hired umpires to supervise the games, and the umpire did not see the collision between the players or control the players, thereby preventing the collision from happening. Mr. LeBoeuf also argues that Terrebonne Parish failed to inform the players of the rules of the game.
The deposition testimony of the players involved and of the umpire reveal that there was absolutely no warning or indication that a collision was about to occur between any of the players. Equally important, the testimony establishes that the umpire and the players involved were all above-average softball players with many years of experience and they were well-versed in the rules of the game. Additionally, the testimony reveals that the written rules of the game were generally given to the team captains at the beginning of the season with the expectation that the rules would be shared with the members of each individual team. The testimony also establishes that the umpire for this game had never had problems with any of the players involved and he had not experienced or witnessed any rule infractions or unruly, reckless, deliberate, or wanton conduct that would have required him to eject any of the players from the game or otherwise heighten his observance of the players during the game. Further, there is absolutely no evidence that any of the players violated the rules of softball during this particular game or that an additional umpire would have somehow changed the course of events leading to the collision between the players. In short, the evidence confirms that insofar as Terrebonne Parish is concerned the accident and resultant injury were the inherent and unfortunate result of players colliding while competitively and aggressively playing the game of softball. The undisputed facts show that this accident was a sudden and precipitous event that Terrebonne Parish would have been hard pressed to prevent, regardless of the number of umpires employed or the repetition of softball rules to experienced players before the game began.
In conclusion, we find that the record as a whole does not show any question of fact that Terrebonne Parish's recreational facility created an unreasonable risk of harm or that Terrebonne Parish breached any legal duty to Mr. LeBoeuf during the softball game in which he was injured. Mr. LeBoeuf did not offer any evidence to meet his burden, and he cannot rely on the mere allegations of his pleadings. Because Mr. LeBoeuf failed to establish that Terrebonne Parish breached a duty to him in this case, the trial court was correct in granting Terrebonne Parish's motion for summary judgment.

CONCLUSION
The partial summary judgment granted in favor of Terrebonne Parish and dismissing Mr. LeBoeuf's claims against Terrebonne Parish is affirmed. All costs of this appeal are to be paid by Mr. LeBoeuf.
AFFIRMED.
NOTES
[1] Mr. LeBeouf filed this lawsuit individually and on behalf of his minor son, Kevin Paul LeBeouf, Jr.
[2] This partial summary judgment was final and immediately appealable without the need for a specific designation or certification by the trial court, pursuant to LSA-C.C.P. art. 1915A(1) and A(3). See Motorola, Inc. v. Associated Indem. Corp., 02-0716 (La. App. 3 Cir. 4/30/03), 867 So.2d 715, 719 (en banc).
[3] AIG Life Insurance Company (incorrectly identified as AIG Group, Inc. in the petition) also generally denied Mr. LeBeouf's allegations in its answer, but admitted that it had issued a blanket accident insurance policy to Terrebonne Parish that provided coverage if there was liability on the part of Terrebonne Parish for the incident at issue.